𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## W. H. HARRISON V. GARDNER INVESTMENT CORPORATION.

March 16, 1922.

Absent, West, J.

1. EVIDENCE—*Documentary Evidence—Res Gestae—Agreement with Plaintiff's Agent—Case at Bar.*—In an action of assumpsit by an intended purchaser of real property to recover a deposit paid to defendants, real estate brokers, upon the purchase ·price of the property, the trial court did not err in refusing to exclude from the jury an agreement in writing under which the deposit was made between the defendant, as agent for the owner of the property, and an agent of plaintiff, which last-named agency was known to the defendant, though not stated in the writing.

2. EVIDENCE—*Documentary Evidence—Res Gestae—Agreement with Plaintiff's Agent—Case at Bar.*—The execution of the writing referred to in the preceding syllabus was one of the circumstances which attended the payment of the deposit into the hands of the defendant. Clearly, therefore, the writing was properly admissible in evidence as a part of the *res gestae.* Its effect as evidence, however, was dependent upon the question of fact whether the writing proved to be what the evidence for the defendant tended to show the defendant considered it to be at the time it received the money of the plaintiff.

3. INSTRUCTIONS—*Peremptory Instructions—Directing Verdict—Application of Section 6003 of the Code of 1919, Where the Verdict Depends Upon a Question of Law.*—Section 6003 of the Code of 1919, forbidding peremptory instructions, is not to be construed as applying to cases in which the verdict of the jury depends necessarily and exclusively upon a question of law, such as the legal effect of a deed or contract. An instruction, therefore, which merely contained the construction of a written contract by the trial judge is not *per se* in violation of this section of the Code, although directing a verdict for one of the parties.

4. INSTRUCTIONS—*Invading Province of Jury—Involving Conclusion of Fact Contrary to the Evidence—Case at Bar.*—In an ac-

tion of assumpsit by an intended purchaser of real property
to recover a deposit paid to defendants, real estate brokers,
upon the purchase price of the property, an instruction which,
in effect, told the jury that an agreement in writing between
the defendant, as agent for the owner of the property, and an
agent of plaintiff, one W., which last-named agency was known
to the defendant, though not stated in the writing, could not
be considered as a contract between the defendant, as agent
of the owner, and W., as agent of the plaintiff, was erroneous,
both because it took from the jury the consideration of the
evidence on a question of fact, and because it embodied a con-
clusion of fact directly contrary to the uncontroverted evidence,
which was to the effect that if the writing was a contract at
all, it was a contract between plaintiff and defendant, and not
between W. and defendant.    But in the absence of evidence
establishing the fact that plaintiff had authorized W. to make
the contract for him, or had ratified the contract, such error
was harmless.

Error to a judgment of the Circuit Court of the city of
Norfolk in an action of assumpsit.   Judgment for defend-
ant.   Plaintiff assigns error.

*Reversed.*

This is an action of *assumpsit,* instituted by W. H. Har-
rison, the plaintiff in error (hereinafter called plaintiff),
against the Gardner Investment Corporation, the defend-
ant in error (hereinafter called defendant), the declaration
containing the common counts of a declaration in *assumpsit*
at common law, the object of the action being to recover
the sum of $500.00, money of the plaintiff alleged to have
been "had and received by the defendant to the use of the
said plaintiff."

The defendant pleaded the general issue of *non-assump-
sit,* on which issue was joined.   The following grounds of
defense were filed by the defendant:

"Each and every defense which may be made under the
general issue, and, in addition—

"That there is no privity between the parties to this case.

"That defendant acted merely as agent in the deal in question in this case.

"That nothing is due from defendant to plaintiff.

"That plaintiff has no standing or right of recovery in this case."

There was a trial by jury which resulted in a verdict for the defendant. The trial court entered judgment accordingly and the plaintiff brings error.

Certain facts appearing from the evidence seem to be uncontroverted. Such of those facts as are material may be stated as follows:

On August 1, 1919, the plaintiff, being at the time at Tutwiler, Miss., saw in a recent issue of a newspaper published in the city of Norfolk, Va., the following advertisement of property for sale:

"Fairfax avenue: Garage and lot—lot 25x125 feet; brick garage, tile roof, six garages renting for $42 month, and about fifteen or twenty more can be built; rental of these will be guaranteed. Price, $8,000; $2,000 cash, $2,550 fix years, $2,500 ten years."

The evidence does not show whether or not the advertisement had any name signed to it, of the owner, or agent of the owner of the property, or why the plaintiff connected the defendant with the subject. But the fact was that on seeing this advertisement the plaintiff cut it out of the newspaper and, on August 1, 1919, from said place in Mississippi, wrote the following letter to the defendant, inclosing therein the said newspaper clipping:

"Gardner Invest. Corptn.:

"I will take it. Write up papers and let me know how much you want till we can get papers fixed.

(Signed)    "W. H. Harrison."

The defendant did not reply to this letter.

Afterwards, on what date does not appear, the plaintiff wired to one W. L. Wagner, who was in the city of Norfolk, and who had money belonging to the plaintiff deposited in his hands subject to the order of the plaintiff, "to see" the defendant, the Gardner Investment Corporation, "in regard to this matter" and to "secure that property" by depositing with defendant money of the plaintiff of such an amount as the defendant might require, "until" (the plaintiff) "could get there." (Whether the authority to Wagner "to secure that property" limited him to merely making the deposit or commissioned him to enter into a contract as agent for the plaintiff, and, if so, what contract, are questions of inference left in doubt by the evidence, as hereinafter mentioned.) This telegram does not appear in evidence, nor does any witness undertake to give its language. The telegram was the only communication of the plaintiff to Wagner on the subject so far as appeared from the evidence. The plaintiff did not send Wagner any copy of the advertisement.

On receipt of the telegram, Wagner went to see the defendant, not as acting for himself, but as the agent of the plaintiff; and the uncontroverted testimony is express that the defendant then, and in all the transactions with Wagner subsequently, "knew" that Wagner "was dealing" for the plaintiff, and not for himself. But the defendant required Wagner to sign an agreement in writing in which Wagner was named as the purchaser, without mention of the fact that he was such as the agent of the plaintiff, and to deposit $500.00, both of which Wagner did; the uncontroverted testimony, however, being that the defendant knew at the time that the $500.00 deposited consisted of money belonging to the plaintiff "and were deposited according to instructions" (Wagner) "received from" (the plaintiff); and that Wagner was acting in signing the agreement as agent for the plaintiff, and not for himself;

so that the agreement was made by Wagner for the sole benefit of the plaintiff.

The agreement referred to, so far as material, was in the following form:

"This agreement of sale made in triplicate, this 11th day of August, 1919, between Gardner Investment Corporation, agents for E. H. Odend'hall (hereinafter known as vendor), and W. L. Wagner (hereinafter known as the purchaser).

"Witnesseth: That for and in consideration of the sum of five hundred no/100 dollars ($500.00), receipt of which is hereby acknowledged, the vendor agrees to sell and the purchaser agrees to buy for the sum of eight thousand no/100 dollars, all that certain piece or parcel or lot of land described as follows, to-wit:

*          *          *          *

"The purchase price to be paid as follows:

"First: The five hundred no/100 dollars ($500.00) cash above received to apply to the purchase price.

"Second: Two thousand four hundred no/100 dollars ($2,400.00) cash when the deed is delivered and full settlement is made.

*          *          *          *

"Fourth: The purchaser further agrees to give a deed of trust to secure the payment of five thousand one hundred no/100 dollars ($5,100.00), evidenced by notes, bearing interest at the rate of six per cent per annum, payable semi-annually, as follows:

"One-half in five years, and one-half in ten years.

"The vendor agrees to deliver the above property with a general warranty deed and the usual covenants of title signed and executed by all parties interested in the property, same to be prepared at the expense of the vendor.

"All taxes, insurance, rents and interest are to be prorated as of date of settlement, and settlement is to be made on or before September 1, 1919.

\*          \*          \*          \*

"It is understood that Gardner Investment Corporation are the agents for the vendor, and he agrees to pay them a commission for making this sale of five per cent on the first five thousand dollars and three per cent on the bal-' ance of the total purchase price.

"It is further understood that should purchaser fail to consummate this contract, any amount paid will be refunded as liquidated damages at the option of the vendor  \*  \*  \*.

"Witness the following signatures and seals this 11th day of August, 1919.

(Signed)    "Gardner Investment Corp'n,

"Agents.    (Seal)``

"J. W. Gardner, President.    (Seal)

"W. L. Wagner.            (Seal)"

The plaintiff came from Mississippi by automobile.  He engaged a certain title company to examine the title and represent him in closing the purchase of the property.  On or about September 10, 1919, the attorney for Odend'hall, the owner of the property, had prepared a deed conveying the property to the plaintiff, not to Wagner, and had the deed with him duly executed and acknowledged, ready for delivery, and met the plaintiff at the office of the title company with a view to closing the contract.  Meanwhile, the deed of trust and notes provided for by the agreement in writing aforesaid had been drawn by the title company, at the direction of the plaintiff, but in accordance with the "dictation" of the attorney for Odend'hall, the owner, as that attorney himself testified.  This attorney further testified on the subject of what occurred on this occasion, as follows:  "We were about to go to the stage of carrying out the contract of prorating the taxes and the rents, and so on, when Dr. Harrison" (the plaintiff) "raised the objection then that the contract, as he understood it, provided

that the garages were rented, and that the rents for the garages were guaranteed for a year." (It may be here noted that the agreement in writing aforesaid contained no provision as to the property being rented, or as to guaranteeing the rents, those references appearing in the advertisement only; so that the plaintiff could not have been here referring to said agreement in writing as "the contract," if he knew its contents.) The witness proceeded further with his testimony, as follows: "When he told me that, Mr. Odend'hall not being with me, I told them they would have to postpone the settlement, as I was not authorized by Mr. Odend'hall to carry out any such contract as that. Several (* * *) after that, Mr. Odend'hall came to my office and directed me to carry out the terms of the contract with this modification, that he was to allow Dr. Harrison one year's rent on those garages, I think, at $7.00 per month, and credit that as accrued interest on the back of the note. After receiving those directions, I went back to the title company, at the hour designated, and waited for about three-quarters of an hour, and Dr. Harrison did not put in an appearance."

On the subject of what occurred after he got to Norfolk, and at his meeting with the attorney for the owner, above referred to, when they failed to close the contract of purchase, the plaintiff testified as follows:

"In the first place, I understood I was to pay $1,500.00 more, but they wanted $2,400.00 more, I think it was. I passed that and was about—I did draw a check for $2,400, and then I found that the garages were not rented, that there were only three of them rented, and I tore the check up. That is my recollection.

"Q. Did they show you a copy of any contract that had been made in relation to this property?

"A. Showed me a contract which says that the money

shall be returned to me if not satisfactory.    I think that is written in the contract."

Wagner testified on the same subjects as follows:

"Q. Please tell the court and jury what occurred as soon as he (the plaintiff) came here and found the condition of the property?

"A. We first went to the office of the Gardner Investment Corporation to take up the matter of transferring the title.    There was some difficulty in finding out whether or not the garages were rented.    It was finally decided that that matter would be settled later, and we adjourned to meet later in the office of the Guaranty Title and Trust Company in order to transfer the title to the property, but upon finding that the garages were not all rented the deal was postponed.

"Q. Was the deal consummated?

."A. No, sir.

"Q. Why was it not consummated?

"A. It was not consummated because the property was not as represented, and we didn't want it."

It was also shown in evidence as an uncontroverted fact that the defendant had the $500.00 in its hands at the time of suit, but had been instructed by Odend'hall not to turn it over to the plaintiff, and that at the time of the trial the defendant still had the money in its hands.

There are only three questions on which any conflict is perceived in the evidence.    Those questions are:    (1) Whether Wagner, by reason of the general terms of the telegram to him, was given such large discretion that he was authorized by the plaintiff to enter into the contract as expressed in the written agreement aforesaid, as agent for the plaintiff, so as to constitute that agreement the contract binding on the plaintiff?    (2) Whether the conduct of the plaintiff, after he arrived in Norfolk and knew of the agreement in writing, was such that he ratified that

agreement? and (3) whether, if such agreement was binding on the plaintiff as his contract, there was a breach of that contract on the part of the plaintiff?

There may be further questions in the case whether the refunding of the money paid, mentioned in the contract, means what is there said, and if so whether the option there mentioned goes to the refunding or merely to the effect thereof; or whether there was a meeting of the minds of the parties on the meaning of "retained" instead of "refunded," the word used in the writing, there being in such cases a mere clerical error and mutual mistake in using the word "refunding" instead of "retained." These may be questions of law, or mixed questions of law and fact, if fully developed by the evidence. They are not fully developed by the evidence in the record, and need not be further specifically mentioned.

Of the evidence bearing on the three questions of fact above stated, it is sufficient to say that the conflict is more in the inferences which may be contended should be drawn from the evidence than in the evidence itself; and what inferences should be drawn from the evidence, whether in favor of the plaintiff or defendant, upon these questions, are, under the circumstances, disclosed, controverted matters of fact, about which reasonable minds may reasonably differ in conclusions.

The action of the trial court on the subject of the instructions appears from the record to have been as follows:

"The following instruction granted at the request of the defendant is the only instruction granted. It was granted over the objection of the plaintiff, and the plaintiff excepted:

" 'The court instructs the jury that under the law it is the duty of the court—that is, the judge—to construe the written contract in evidence in this case, so construing said written contract in this case the court instructs you that the defendant is not liable to the plaintiff in this case.'

"Before granting this instruction, the court stated to the plaintiff's counsel, in the presence of the jury, in response to objections to the instruction, which plaintiff's counsel argued:

"The Court: 'The defendant company is haled into court upon a claim that it has money belonging to plaintiff. Defendant admits having $500.00 paid him on account of property bought by a Mr. Wagner, with whom a sealed contract was entered into with one Odend'hall—neither one of these are parties to the suit. This contract has been admitted as evidence because defendant received the $500.00 in pursuance thereof. If the plaintiff, who is not a party to the contract, is permitted to recover, there is nothing to prevent Wagner, who is not a party to the suit, from proceeding on his contract in a separate action to recover the same $500.00.

" 'I feel constrained, therefore, to tell the jury that, under this contract and the evidence connected therewith, there cannot be a verdict for the plaintiff.' "

The following instruction was requested by the plaintiff, but refused by the court:

"The court instructs the jury, that if they believe from the evidence that the defendants advertised the garages on Fairfax avenue for sale, and that by letter in writing, August 1st, the plaintiff agreed to take the property, and in pursuance thereto instructed a deposit of a sum of money to secure the property until he could come on and close the deal, and that after he came on to close the deal he found that the property was not rented, as stated in the advertisement, and refused to close the deal on the ground of material misrepresentations, that he is entitled to have his deposit returned in this case, and they should find for the plaintiff."

*J. Edward Cole,* for the plaintiff in error.

*Jas. G. Martin,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

.The questions presented for our decision by the assignments of error will be disposed of in their order as stated below.

[1] 1. Did the court err in refusing to exclude from the jury the agreement in writing between the defendant, as agent for the owner of the property, and Wagner, as agent for the plaintiff, as the latter undertook to act and as dealt with by the defendant as an actor in the matter, as shown by the uncontroverted evidence, although the last-named agency was not stated in the writing?

This question must be answered in the negative.

The defendant, according to the testimony in its behalf, received the $500.00 sued for, certainly partly, in pursuance of the provisions of this writing. The execution of this writing was one of the circumstances which attended the payment of this money into the hands of the defendant. Clearly, therefore, the writing was properly admissible in evidence as a part of the *res gestae.* Its effect as evidence —how far it would be relied upon by the defendant as authorizing it to hold the $500.00 sued for—was and is another question, dependent upon the question of fact whether the writing proved to be what the evidence for the defendant tended to show the defendant considered it to be at the time it received the money of the plaintiff, namely: a contract binding upon the plaintiff and under the terms of which the defendant had the right to receive and hold possession of the said money of the plaintiff.

[3, 4] 2. Did the court err in granting the single instruction which was given the jury at the request of the defendant, which is set forth above?

This question must be answered in the affirmative.

In the argument of the assignment of error involving this instruction, it is urged that it was reversible error in

the court to give it for the reason that it is a peremptory
instruction, and hence in violation of the statute (section
6003 of the Code) forbidding peremptory instructions. But,
as held in *Small* v. *Va. Ry. & Power Co.*, 125 Va. 416, 99 S.
E. 525, that statute is not to be construed as applying to
cases in which the verdict of the jury depends necessarily
and exclusively upon a question of law, such as the legal ef-
fect of a deed or contract. The instruction in question con-
tained merely the construction of the written contract by the
trial judge. Therefore, it was not *per se* in violation of the
statute just mentioned.

However, the instruction under consideration, when read
in the light of the statement of the trial judge before the
jury in explanation thereof, and in the light of the evi-
dence in the case, in effect, told the jury that the writing
above mentioned was a contract between Wagner and the
owner of the property sold, and could not be considered as a
contract between the defendant, as agent of the owner, and
Wagner, as agent of the plaintiff, in any aspect of the case.
The uncontroverted evidence before the jury was to the
effect that if the writing was a binding contract at all, it
was a contract between the parties last named, and not a
contract between Wagner and the owner. The instruction
was, therefore, erroneous, both because it took from the
jury their consideration of the evidence on this pure ques-
tion of fact, and because it embodied a conclusion of fact
which was directly contrary to the uncontroverted evidence.

There is only one hypothesis upon which we could decline
to reverse the case because of such erroneous instruction,
and that is this: If the evidence was such that, regarding
the agreement in writing as having been entered into by
the defendant with Wagner, as agent of the plaintiff, the
jury would not have been warranted in coming to any other
conclusion than that the plaintiff was bound by such writ-
ing as his contract, either because (1) he had authorized

Wagner to make it for him, or (2) he had ratified it after it was made; and further, that the plaintiff had unjustifiably broken the contract, and as a result had forfeited the $500.00. In such case, the instruction might be considered as harmless error. But the evidence before the jury on all three of those questions of fact (not to here mention the difficulties in the way of arriving at the result just referred to upon the meagre facts pertaining thereto appearing in the evidence), was such that they were seriously controverted questions of fact, about which reasonable minds may reasonably differ in conclusions. They are, therefore, peculiarly jury questions, and they should have been left to the decision of the jury, under suitable and proper instructions, if asked for by either of the parties. Hence, the instruction under consideration cannot be considered as harmless error, and the hypothesis mentioned cannot save the case from reversal.

3. The only remaining question presented by the assignments of error is whether the court erred in refusing to give the instruction set forth above, asked for by the plaintiff.

The instruction contains obvious defects. However—

As it is not probable that an instruction in this precise form will be asked for by the plaintiff upon a new trial, we deem what we have said above in general terms, in regard to the instructions which should be given upon a new trial, sufficient to dispose of the subject for all practical purposes should the issues and the evidence on a new trial be the same as upon the one already had, and we feel that it is unnecessary for us to say anything further concerning the precise instruction last mentioned, either in approval or disapproval of it.

The verdict and judgment under review will be set aside and annulled and a new trial, *de novo,* will be awarded the plaintiff.

*Reversed.*