# Richmond.

## C. G. HARRIS *v.* C. F. McKAY, JOHN H. VAIL AND ALVAH H. MARTIN, JR.

### March 20, 1924.

### Absent, Kelly, P., and Burks, J.

1. SEALS AND SEALED INSTRUMENTS—*Sealed Instrument Executed by Agent in his Own Name—Liability of Undisclosed Principal.*—The general rule was that an undisclosed principal cannot be held liable upon a contract under seal executed by an agent in his own name, upon the doctrine that action cannot be brought upon a sealed contract against those whose names do not appear therein. But this rule has no application where an agent is authorized to execute a contract which requires no seal and he unnecessarily attaches a seal to the instrument executed by him. . In such cases the seal may be regarded as surplusage, and the principal will be held as upon a simple contract.

2. SEALS AND SEALED INSTRUMENTS—*Technical Distinction between Sealed and Unsealed Instruments—Tendency to Ignore Distinction.*—The tendency of the courts is to ignore in large measure the technical distinctions between sealed and unsealed instruments which were so jealously guarded by the common law. While it may be well to retain the seal to dispense with proof of consideration or lengthen the period of limitation, no sufficient reason appears why sealed instruments should not, in other respects, be dealt with as simple contracts.

3. SEALS AND SEALED INSTRUMENTS—*Sealed Instrument Executed by Agent in his Own Name—Liability of Undisclosed Principal.*—The reason for the rule that an undisclosed principal cannot be held liable upon a contract under seal, executed by his agent in his own name, no longer exists and there would seem to be no sufficient reason why the protection of the rights of litigants requires that that doctrine be longer maintained.

4. SEALS AND SEALED INSTRUMENTS—*Sealed Instrument Executed by Agent in his Own Name—Liability of Undisclosed Principal—Case at Bar.*— In the instant case, a proceeding by way of notice of motion, the action was based upon the promise of defendant to assume and pay notes secured by a deed of trust upon property purchased by the agent of defendant and others, and a deed by the vendors to the

agent of defendant and the other grantees was used as evidence of the promise to pay the notes. Defendant was the undisclosed principal of this agent. The action was not in covenant upon the deed, but upon the independent promise to pay the notes.

*Held:* That the defendant was liable, as the independent promise to pay would be valid without a seal and the seal might be disregarded.

5. AGENCY—*Contracts—Privity—Undisclosed Principal.*—Where an agent's authority is proved, no question of privity can arise. The doctrine of principal and agent, whether disclosed or undisclosed, recognizes that privity of contract exists between the principal and one dealing with the agent. The act of the agent is the act of the principal.

6. AGENCY—*Undisclosed Principal—Negotiable Instruments—Case at Bar.*— In the instant case action was brought against an undisclosed principal upon the promise of his agent to assume the payment of certain notes. It was contended by defendant that as the doctrine of undisclosed principal did not apply in cases where negotiable instruments were involved, it did not apply in the instant case.

*Held:* That there was no merit in this contention, as the action was not upon the negotiable notes, but upon the promise of the agent to assume and pay the notes.

7. AGENCY—*Undisclosed Principal—Election.*—To hold an undisclosed principal, there must be an election by all persons interested to discharge the agent from all liability and look to the principal, and having made the election to hold his principal the parties thereby waive their right to sue the agent; and the doctrine of election does not require an additional election from joint contractors of an agent and undisclosed principal, before those claiming a right under the contract may enforce the same against the undisclosed principal.

8. AGENCY—*Undisclosed Principal—Evidence to Establish—Case at Bar.*— In the instant case, a proceeding by way of notice of motion, the action was based upon the promise of defendant to assume and pay notes secured by a deed of trust upon property purchased by the agent of defendant and others, and a deed by the vendors to the agent of defendant and the other grantees was used as evidence of the promise to pay the notes.

*Held:* That there was sufficient evidence to establish that defendant was an undisclosed principal of the agent unknown to the vendors, and also sufficient evidence that defendant authorized the assumption of and promised to pay the deed of trust.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiff in error.

*Smith & Smith, T. J. Wool* and *D. Todd Wool*, for the defendants in error.

WEST, J., delivered the opinion of the court.

On February 2, 1920, C. F. McKay, John H. Vail and Alvah H. Martin, Jr., conveyed certain real estate on Bank street in the city of Norfolk to J. Sidney Smith, trustee, to secure the payment of $48,000.00, as evidenced by sixteen notes for $3,000.00 each, signed by the grantors; payable $15,000.00 in two years, $15,-000.00 in three years, and $18,000.00 in five years.

On February 26, 1920, McKay, Vail and Martin sold this property to George Betz, John Kelbaugh and C. G. Harris. C. G. Harris not being known in the transaction at the time, the conveyance was made to Kelbaugh, Betz and Vernon B. Harris, who was acting as agent for his brother, C. G. Harris. A part of the consideration was paid in cash, and the grantees agreed to assume and pay the notes of the defendants, secured by the deed of trust, as a part of the consideration for the conveyance, and executed a second deed of trust to secure the payment of the balance of the purchase money.

The deed of February 26, 1920, was signed and sealed by the grantors and also by John Kelbaugh, George Betz and *Vernon B. Harris*, the grantees, as evidence of the agreement to assume and pay off the notes secured by the deed of trust to Smith, trustee.

Upon the failure of the purchasers to pay the first two notes at maturity and the interest on the indebted-

ness of $47,500.00 ($500.00 of the $48,000.00 having been paid), the notes and interest, amounting to $7,425.00 were paid by McKay, Vail and Martin, who thereupon brought suit, by notice of motion for the amount so paid, against John Kelbaugh, George Betz and *C. G. Harris,* who, it developed, was the undisclosed principal in the transaction and the real party in interest, as his brother, Vernon B. Harris, was acting as his agent and under instructions from him. While C. G. Harris' name does not appear in any of the deeds he put up all the money and obtained all the rents and paid all of the interest that was paid on the indebtedness. At the time the property was conveyed, there was a divorce suit pending between C. G. Harris and his wife. He had experienced difficulty in conveying other real estate, and in order to avoid any obstacle on the part of his wife in the event of a resale of the property involved in this suit, he instructed the attorney to so draw the deed as to vest the title in his brother, Vernon B. Harris.

There was evidence to warrant the jury in finding the foregoing facts.

A verdict was returned in favor of the defendants in error, plaintiffs below, against George Betz, John Kelbaugh and C. G. Harris for the sum of $7,425.00, with interest, as claimed in the notice. Judgment was entered thereon, to which this writ of error was awarded as to C. G. Harris.

The plaintiff in error relies on seven assignments of error.

The first assignment is to the action of the court in refusing to set aside the verdict as to C. G. Harris, as contrary to the law and the evidence and without evidence to support it.

The plaintiff in error contends:

(a) It was contrary to law to hold that C. G. Harris assumed and promised to pay off the $48,000.00 deed of trust by a covenant in a deed *inter partes*, signed and sealed by Vernon B. Harris and others, in which C. G. Harris was nowhere mentioned.

[1] It is true, according to the general rule, as contended by plaintiff in error, that an undisclosed principal cannot be held liable upon a contract under seal executed by an agent in his own name, upon the doctrine that action cannot be brought upon a sealed contract against those whose names do not appear therein. But this rule has no application where an agent is authorized to execute a contract which requires no seal and he unnecessarily attaches a seal to the instrument executed by him. In such cases the seal may be regarded as surplusage and the principal will be held as upon a simple contract.

In 2 C. J. 458-459, the law is stated thus: "In most jurisdictions it is held that where an agent, authorized to execute a simple contract only, unnecessarily attaches a seal to the instrument executed by him, and which would be good as a simple contract, the seal may be treated as surplusage, and the validity of the contract be in no way affected by it, although his authority was not under seal, but was conferred merely by parol; but the principal will not be bound by such an instrument as a sealed instrument."

In 2 C. J., at paragraph 524, it is further stated: "According to some authorities, a qualification of this rule exists where the seal affixed to the contract by the agent was not necessary to the validity of the instrument at common law, it being held in such cases that the seal may be disregarded as surplusage, and the principal be held liable as upon a simple contract."

In *Big Vein Pocahontas Co.* v. *Browning*, 137 Va. 34,

120 S. E. 247, where the assignée of a lease assumed
in the deed of assignment the obligations imposed on
the original lessee by the terms of the lease, one of
which was to refer certain matters to arbitration, and
assignee refused to comply with this provision and re-
voked and annulled the agreement to submit to arbi-
tration, it was held that the revocation, though not
under seal, was valid, a revocation under seal being un-
necessary, since the implied assumption to carry out
the obligation in the lease, which was under seal, did
not in itself convert such implied assumption into a
written agreement under seal.

In the case of *Waddill* v. *Sebree*, 88 Va. 1012, 14 S. E.
849, 29 Am. St. Rep. 766, Terrell, without disclosing
the name of his principal, entered into a contract under
seal, with Waddill, by which he agreed to buy certain
real estate.    Later Terrell disclosed Sebree as his prin-
cipal and showed that every step taken by him had been
expressly directed by Sebree in person.    Waddill sued
Terrell and Sebree for specific performance of the con-
tract.    Sebree made the defense that he was not named
in the contract and therefore was not bound by it.    It
appearing that he directed Terrell when and how to
proceed and approved and ratified his actions in the
premises, Sebree was held liable under the contract and
required to specifically perform the same.    In the
opinion the court said: "There is no dispute about the
facts stated above.    The defense is made that Sebree is
not named in the contract and hence not bound by it.
The facts being established that Sebree, the principal,
authorized Terrell to do for him the acts that he did do,
that he directed each and every act in detail as transac-
ted, that he approved and ratified each and every
act as done, and after its completion makes these acts
his own   *   *   he is bound by Terrel's acts directed
by him for his own benefit."

In the case of *Harrison* v. *Gardner Investment Corporation*, 132 Va. 238, 111 S. E. 234, a written contract of sale was entered into between the corporation as agent and one Wagoner, in which Wagoner agreed to purchase certain real estate upon certain terms and conditions set forth in the contract, which was in the form of a deed *inter partes*, sealed and signed by Wagoner in his own name, without disclosing any fact to indicate that he was acting other than for himself. Wagoner deposited with the corporation $500.00 on the purchase price. The contract was abandoned and Harrison, claiming to be Wagoner's principal, sued the corporation in assumpsit to recover the $500.00 paid for him by Wagoner, as his agent. Defense was made that there was no privity between Harrison and the corporation, and that he had no right of recovery. The court held that the contract under seal was properly admissible as evidence to prove the agreement; that it was for the jury to say whether or not Harrison was the real principal, and if so, he was entitled to recover, although his name did not appear in the writing which was under seal.

[2] The tendency of the courts is to ignore in large measure the technical distinctions between sealed and unsealed instruments which were so jealously guarded by the common law. While it may be well to retain the seal to dispense with proof of consideration or lengthen the period of limitation, we know of no sufficient reason why they should not, in other respects, be dealt with as simple contracts.

In *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157, this court held that a deed might be delivered to the grantee in escrow. In the course of the opinion, Judge Burks, speaking for the court, said: "The reasoning upon which parol evidence will not be

received to vary or alter the terms of a valid written instrument applies with equal force and like limitations to sealed and unsealed instruments.    There is no more solemnity in making one than in making the other, and we are unable to see any reason, policy or expediency that demands of the courts the further maintenance of a doctrine that is 'highly technical and unsatisfactory,' and wholly unnecessary for the protection of the rights of litigants.''

[3] With equal accuracy it may be said that the reason for the rule that an undisclosed principal cannot be held liable upon a contract under seal, executed by his agent in his own name, no longer exists; and we know of no sufficient reason why the protection of the rights of litigants requires that doctrine to be longer maintained.

[4] The instant case is a proceeding by way of notice of motion, similar to an action of assumpsit.    It is based upon the promise to assume and pay the notes secured by the deed of trust, and the deed of February 26, 1920, from McKay and others to Vernon B. Harris and others, is used as evidence of this promise to pay. The action is not in covenant upon the deed, as an instrument under seal, but upon the independent promise to pay, which would be valid though not under seal.

The authorities from other jurisdictions sustain the contention that a seal unnecessarily attached to a writing which would be valid without a seal should be disregarded as surplusage and the instrument treated as a simple contract.

In *Horner* v. *Beasley*, 105 Md. 193, 65 Atl. 820, an agent was authorized verbally to find a purchaser, for certain real estate, and made an *inter partes* contract of sale under seal and signed it in her own name.    Upon

breach of the contract the purchaser sued seller's principal in assumpsit for damages, and was allowed to recover. In the opinion the court said: "It is undoubtedly true, as a general rule, that an assumpsit which is the appropriate form of action for the recovery of damages for the breach of a simple contract, will not lie to recover damages for the breach of a contract under seal. Nor can, ordinarily, a contract under seal be made by an agent in the exercise of an authority resting upon a simple contract. But where the sealed contract would be good as a simple one, it will not be rendered invalid by the presence of a seal, which may be rejected as surplusage, and the contract treated and sued upon as a simple contract. This is especially true where the principal has recognized or ratified the contract which had been made by his agent."

*Nichols* v. *Haines*, 98 Fed. 692, 39 C. C. A. 235, involved a contract for the purchase of oranges, in the form of an *inter partes* deed which was signed and sealed by the parties. The contract was breached and in an action of assumpsit on the contract the defendant was held liable. In the course of the opinion the court said: "The next contention is that the execution of the contract by the plaintiffs in error was not proved. Their copartnership name was signed to the agreement by an agent whose authority, otherwise amply proven, was not shown by an instrument under seal. The contract is one to which a seal is not necessary. The action is in assumpsit, not covenant, and the seals attached may be regarded as surplusage."

To the same effect is *Kirschborn* v. *Bonzel*, 67 Wis. 178, 29 N. W. 907; *Tapley* v. *Butterfield*, 1 Metc. (Mass.) 515, 35 Am. Dec. 374; *Sargent* v. *Webster*, 13 Metc. (Mass.) 497, 46 Am. Dec. 743; *Allen* v. *Montgomery*, 25 Ga. App. 817, 105 S. E. 33.

[5] The plaintiff in error relies principally upon the following authorities for the proposition that action can be brought upon a sealed contract only against those whose names appear therein: *Thacker* v. *Hubard*, 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414; *Tuthill* v. *Wilson*, 90 N. Y. 423; *Huntington* v. *Knox*, 7 Cush. (Mass.) 374; Burks' Pl. & Pr. (2d ed.), p. 57; 1 Minor's Inst. (4th ed.) 236; *Leterman* v. *Charlottesville Lumber Co.*, 110 Va. 769, 67 S. E. 281.

In the *Thacker-Hubard Case*, the deed conveying the property to Thacker contained an assumption by Thacker of the payment of the deed of trust notes given by Portlock. Thacker did not sign the deed of bargain and sale containing the agreement to assume, but accepted it. Thacker was sued by the mortgagee for a balance due on the notes after foreclosure proceedings had been had. The court held that it had no jurisdiction to entertain the action of the creditor-mortgagee against Thacker who assumed the mortgage by simple contract, *because there was no privity of contract between them*, the contract having been made between the mortgagor and the purchaser-defendant.

That case is not controlling here, since in the instant case the persons with whom the promise to assume and pay was made are suing the assumers and alleging that one of the assumers acted through a duly authorized agent. Where, as here, the agent's authority is proved, no question of privity can arise. The doctrine of principal and agent—whether disclosed or undisclosed—recognizes that privity of contract exists. The act of the agent is the act of the principal.

*Tuthill* v. *Wilson* is likewise not in point. This case decided that where an election is made to hold the agent, the undisclosed principal cannot also be held liable.

The evidence in the instant case is that upon learning of the connection of C. G. Harris with the case as undisclosed principal, they immediately notified him that they would look to him alone, and did look to him alone.

In *Huntington* v. *Knox*, 7 Cush. (Mass.) 374, the contract was in writing but *not under seal.* Hence anything said about undisclosed principal as applied to sealed instruments is mere *obiter dictum.*

The citations from Minor's · Institutes, 236, and Burks' Pleading and Practice, relied on by the plaintiff in error, simply state the general rule that an undisclosed principal cannot be held liable upon a contract under seal, executed by an agent in his own name, omitting any reference to the qualification to the rule, where the seal affixed to the contract by the agent was not necessary to the validity of the instrument at common law; and the fact that in such cases the seal may be regarded as surplusage and action brought against the principal as upon a simple contract.    31 Cyc. 1576.

*Leterman* v. *Charlottesville Lumber Co., supra,* holds that both agent and undisclosed principal may not be held liable to a third party contracting with the agent. There is no attempt in the instant case to hold Vernon B. Harris.

[6, 7] (b). The doctrine of undisclosed principal does not apply to the case at bar because that doctrine does not apply in cases where negotiable instruments are involved.

The action here is not upon the negotiable notes but upon the promise of the agent to assume and pay the notes.    No effort is being made to hold the agent, Vernon B. Harris, on the notes, and having made the election to hold his principal they cannot also hold the agent.

(c).   To hold a person as undisclosed principal, there

must be an election by all persons interested to discharge the agent from all liability and look to the principal alone.

The holders of the notes have made an election to hold the undisclosed principal and thereby waive their right to sue the agent. Kelbaugh and Betz were joint contractors with C. G. Harris, and the doctrine of election does not require an additional election from joint contractors of an agent and undisclosed principal, before those claiming a right under the contract may enforce the same.

[8] (d). There is no evidence showing C. G. Harris was undisclosed principal, unknown to McKay, Vail and Martin.

It sufficiently appears from the uncontradicted testimony of Martin that he conducted all the negotiations as a representative of himself and McKay and Vail and he did not know C. G. Harris was interested in the transaction until nearly two years after it had taken place. Besides C. G. Harris testified in his own behalf and does not claim that he had any dealings with Martin, McKay or Vail. The contention that Gurkin was the agent of the defendants in error and that they were therefore charged with knowledge that C. G. Harris was interested in the deed is not sustained by the record.

(e). There is not sufficient evidence showing C. G. Harris authorized the assumption of and promised to pay the deed of trust.

Vernon B. Harris, in pursuance of verbal authority from C. G. Harris, signed and sealed the deed which evidenced the agreement to assume and pay the deed of trust debt. It is in evidence that C. G. Harris told Vernon B. Harris "if Mr. Kelbaugh signs the deed, you sign it."

C. G. Harris' conduct in collecting one-third of the rents and paying one-third of the interest due on the deed of trust debt shows his acceptance and approval of the conveyance and the terms thereof.

The first assignment is without merit.

The second assignment of error is the action of the court in overruling the demurrer of C. G. Harris to the notice of motion. The third, fourth and fifth assignments of error involve the admission of any evidence showing that C. G. Harris is liable as undisclosed principal.

Our views of the law governing the liability of the undisclosed principal are fully set out in our discussion of the first assignment of error, *supra*, and need not be repeated.

Each of these assignments is likewise without merit.

The sixth assignment of error is to the action of the court in granting instructions Nos. 1, 2 and 3, while the seventh assignment alleges that the court erred in refusing to give instruction "A" asked for by the plaintiff in error.

A careful and painstaking consideration of all the instructions granted and refused convinces us that the jury was fairly and fully instructed on the law in the case.

We find no reversible error in either of these assignments.

There was evidence to support the verdict of the jury, and the judgment will be affirmed.

*Affirmed.*