# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## JOSEPH B. HECHT v. THE HAMPTON ROADS FIRE AND MARINE INSURANCE COMPANY, A CORPORATION.

### March 22, 1928.

### Absent, Burks, J.

1. CONTRACTS—*Construction of Written Contracts—Court Directing Verdict—Case at Bar.*—The instant case was a suit by a corporation against a subscriber to recover $10,000.00 loaned the subscriber. There were two written agreements between the parties, one designated as the "Subscription Agreement," under which the subscriber subscribed to fifty shares of the capital stock of plaintiff corporation, and another designated as the "Collateral Note Agreement," under which the subscriber borrowed from the corporation $10,000.00 and agreed to put up certain shares of another corporation as collateral security, and further agreed that the loan should be "evidenced by a note made by the defendant on a form of collateral note regularly used by the company." This form was attached to the contract. Defendant signed the collateral note in question above a provision to the effect that defendant should give additional collateral security when called upon. To this plaintiff objected, and upon refusal of defendant to sign below the provision requiring additional security, brought this action for the $10,000.00. The whole transaction between the parties was in writing, and, so far as the writing dealt with the matter in controversy, there was no ambiguity in the writing. The trial court proceeded to construe the contract in an instruction to the jury, the practical effect of which was to direct a verdict for the plaintiff corporation.

   *Held:* That there was no error, and that the instruction correctly interpreted the contract.

2. APPEAL AND ERROR—*Assignment of Errors—Error in the Instructions and in Excluding Evidence—Where no Other Verdict could have been Properly Returned—Case at Bar.*—In the instant case plaintiff in error assigned as error the instruction given by the court, the action of the court in refusing the instructions asked for by defendant, the action of the court in excluding evidence, and the action of the court in refusing to set aside the verdict, but as the court correctly construed the

contract between the parties in the instruction given, and as there could have been no other verdict properly returned than the one reached, it was unnecessary for the Supreme Court of Appeals to consider these assignments.

3.  CONTRACTS—*Promise to Give Note to Secure Loan—Failure of Promisor to Sign Note so as to Include a Provision as to Additional Collateral—Case at Bar.*—In the instant case plaintiff company sold defendant fifty shares of its capital stock. By a collateral written agreement between the parties, plaintiff company undertook to loan defendant $10,000.00 with which to pay for his subscription. The agreement provided that defendant should put up certain shares in a corporation as collateral security, and further provided that the loan should be "evidenced by a note made by the defendant on a form of collateral note regularly used by the company," and the form of that note was made certain by attaching it to the collateral agreement. The form of collateral note in question contained a provision that defendant, whenever required, should furnish additional security. Defendant signed this note above this provision as to additional security. After the stock certificate had been delivered to defendant, plaintiff discovered that the note had not been signed, as it claimed, by defendant in the proper place, and requested defendant to sign it at the bottom so as to include the provision as to additional security. This defendant failed to do and plaintiff brought the present action against him for the $10,000.00.

*Held:* That plaintiff was entitled to recover.

4.  CONTRACTS—*Contract to Sign a Note Evidencing a Loan—Form of Note Attached to the Contract—Promisor Signing so as to Include all the Provisions of the Note—Case at Bar.*—Where an agreement as to a loan provided that the loan should be evidenced by a note on a form of note regularly used by the promisee, a copy of which form was attached to the agreement, the signature of the defendant at any place on the note which did not include all of its provisions, was not giving a note in compliance with the terms of the agreement.

5.  BILLS, NOTES AND CHECKS—*Collateral Security—Provision as to Additional Security—Conflict with Provision as to Original Security—Case at Bar.*—In the instant case defendant borrowed $10,000.00 from plaintiff. The agreement between the parties contained a provision that defendant proposed to offer four thousand shares of a certain stock as collateral security for the loan. The agreement contained a further provision that the loan should be "evidenced by a note made by the defendant on a form of collateral note regularly used by" plaintiff. This form of note contained a provision that the defendant should give additional security when called upon by plaintiff.

*Held:* That there was no conflict in these provisions, as the first referred to the immediate arrangement as to collateral, and must be interpreted in the light of the other provisions of the contract.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in an action of assumpsit.   Judgment for plaintiff.   Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert W. Shultice* and *Edgar J. Hecht,* for the plaintiff in error.

*Thos. H. Willcox, Jr.,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This case brings before us for review, upon a writ of error, a judgment of the Law and Chancery Court of the city of Norfolk for $10,000.00 with interest at six per cent per annum from November 15, 1921, subject to a credit of $500.00 as of July 30, 1926, in favor of the Hampton Roads Fire and Marine Insurance Company, hereinafter referred to as plaintiff company, as it was in the court below, and against Joseph B. Hecht, hereinafter referred to as defendant, as he was in the court below.

The plaintiff company, through its agent H. G. Blaising, about September, 1921, sold defendant fifty shares of its capital stock, par value $100.00 per share, at $200.00 per share.   To consummate the deal, plaintiff, after considerable negotiations with defendant, agreed to lend the defendant ten thousand dollars with which to purchase the stock.

There are two written agreements in connection with the transaction, one designated in the record as the "Subscription Agreement," and the other as the "Col-

lateral Note Agreement." They appear in marginal notes I and II.

The controversy in the case grew out of the manner in which the collateral note referred to in the agreement was signed by the defendant, the plaintiff's con-

---

I. No. 586    Amount $10,000.00

I hereby subscribe for fifty shares of the Capital Stock of The Hampton Roads Fire and Marine Insurance Company, of the par value of one hundred dollars ($100.00) each, and agree to pay therefor to the order of the company and for its use and benefit in creating capital, surplus and for necessary expenses incident to conducting the business of the company, the sum of two hundred dollars ($200.00) per share, it being understood that not to exceed five (5) per centum of the gross selling price of each share shall be used to cover the costs of organization.

It is agreed that the company has the right to reject all or any portion of this subscription and return to me all payments made on the portion rejected. It is further agreed that upon full payment and acceptance by the company, a certificate showing that the shares are fully paid and nonassessable shall be issued in my name. It is further agreed that no conditions or agreements other than those printed hereon shall be binding on the company. All shares are common stock.

Subscriber, Jos. B. HECHT,
Address, P. O. Box 882.

Witness:
·  JAS. A. BLAINEY,
        Company's Representative.
   H. G. BLAISING,

All checks and other evidences of payment shall be made payable to the company.

II. Note:  On the back of this paper appears the following:

Norfolk, Va., Sept. 30, 1921.

In consideration of this subscription, it is hereby understood and agreed that the payment for same may be arranged by means of a collateral note running ten years from this date and renewable for a further period at option of subscriber. Said note to be on form used by the company, as per copy of note attached. Until declaration of dividends by the company, it is understood that interest accruing on the principal of the note may also be included as part of and additional to the original principal sum of the said note, said deferred accrued interest amounts to bear interest at six per cent per annum. When and as dividends are declared they may be paid over to the subscriber or applied against the principal of this note, any accrued interest or any accruing interest.

The plain purpose of this agreement is that the subscriber desires to take care of the payment of his subscription by borrowing from the company $10,000.00, which amount is to be paid immediately to the company for the amount of the subscription. The subscriber proposes to offer 4,000 shares of the preferred stock of Amer. Sou. Motors Corp., said shares having a present market value of $18,000.00.

THE HAMPTON ROADS F. & M. INSURANCE Co.,
JAS. A. BLAINEY, Active Vice-President.
Jos. B. HECHT, Subscriber.

This subscription taken on makers ability to deliver collateral stock.

H. G. BLAISING.

tention being that the note was never signed as contemplated by the agreement, the defendant's being that it was. The question involves a construction of the agreement.

Blaising, the company's stock salesman, carried the collateral note, which had theretofore been signed by Blainey for the company, to the defendant for his signature, secured his signature and returned to the office of plaintiff with the note, and then delivered the stock certificate to the defendant. Immediately upon discovery by Blainey, vice president of the company, that the note had not been signed by the defendant, as the former claimed, in the proper place, he called on defendant and requested that he sign it at the bottom so as to include the obligation, on the part of the maker (defendant) to furnish additional collateral security, when required by the plaintiff company, which was a part of the form of note used by the company. (To make this statement clear a copy of the form of the note used by the company, showing the signatures of the parties thereto, appears in the margin. Note III.)

III. $10,000.00                          Norfolk, Va., November 15, 1921.
_____Ten (10) years_____after date, I promise to pay to the order of
    with option of renewing for like periods.
    The Hampton Roads Fire and Marine Insurance Company,
                 General Offices—Norfolk, Virginia,
         at its office in the City of Norfolk, Va., for value received,
the sum of_____Ten Thousand and_____ ____00/100 Dollars
    with interest at 6% per annum, payable semi-annually.
It is agreed the Homestead Exemption is waived as to this debt.
With this note I have delivered to said corporation to be held. by it, or should it rediscount or assign the same, its assignee, as collateral security therefor, the following:
Copy, attached to original and copy of Subscription No. 586 for purposes of indentification and as part of special agreement thereto.
    Jos. B. Hecht,                    The Hampton Roads F. & M. Insurance Co.
        Subscriber.                        Jas. A. Blainey,
                                           Active Vice-President.
And I further promise, whenever required by the said corporation or its assignee, to increase the amount of the security for this note until satisfactory to it. Should I fail to increase said security when so required, then the holder of said note shall have the right to collect the same, whether

A controversy then arose between the parties which terminated in the refusal of defendant to sign the note as requested and this action ultimately followed, plaintiff contending that the note was not signed according to the terms of the agreement, and the defendant contending that it was. Plaintiff urges that the plain terms of its agreement with defendant entitle it to protect its loan to the defendant as the form of collateral note, used by it, provides, by calling for additional security. Defendant had not been called upon to provide additional collateral, but he contended that he never could be under his contract. This action was instituted to recover the $10,000.00 loaned by plaintiff to the defendant under this alleged misapprehension. The result of the trial in the lower court was the verdict and judgment set out above.

[1] The trial court determined, and properly we think, that the whole transaction between the parties was in writing, and that, so far as the writing dealt with the matter in controversy, there was no ambiguity in the writing. It therefore proceeded to construe the

due according to its face or not, and to subject the collaterals deposited, making due rebate for unearned interest.

For the purpose of enforcing the payment of said note, the holder thereof, whether the said corporation or any other party to whom the corporation may have assigned the same, by rediscount or otherwise, shall have full power and authority to sell, assign, collect, transfer and deliver the said collaterals, whether original or additional, or so much thereof as may be requisite.

Should sale be made for such purpose, it may be made where the holder of this note may direct, and may be public or private, with or without advertising and with or without notice to or demand of the drawer hereof as the holder may direct. At any public sale hereunder, the holder of said note and collaterals may, without vitiating the sale, become the purchaser of any or all of said collaterals.

If before this note is paid and these collaterals released, the holder of this note shall become the holder of any other debt or liability of mine, whether as drawer or endorser, however the same may be evidenced, the said collaterals or the proceeds thereof so far as not exhausted in paying this note, shall, should the holder of this note so desire, also be held and applied as collateral security to such debt or liability, said application to be made to such of said debts or liabilities as the said holder may elect.

contract in an instruction to the jury, the practical
effect of which was to direct a verdict for the plaintiff.
That instruction, which was the only instruction given
in the case except one as to the burden of proof, cor-
rectly interprets the contract in our opinion.   It ap-
pears in the margin Note IV.

[2] The defendant offered numerous instructions
based upon his theory of the case.   Objections to the
instruction given and exceptions to the action of the
court in refusing the instructions asked for by the
defendant, exceptions to the action of the court in
excluding evidence, and to the action of the court in
refusing to set aside the verdict, form the basis of ten

---

IV. The court instructs the jury that i: they believe from a preponder-
ance of the evidence that the defendant signed the subscription agreement
introduced in the evidence, printed on subscription agreement blank No.
586, and that the Hampton Roads Fire and Marine Insurance Company ac-
cepted said subscription; that not exceeding five per centum of the gross
selling price of each share was used to cover the organization of the plain-
tiff company, and that the plaintiff company delivered to the defendant a
certificate showing the issue to him of fifty shares of the capital stock of the
Hampton Roads Fire and Marine Insurance Company, fully paid and non-
assessable, and the said defendant accepted said stock certificate, the said
defendant then and there became liable to the plaintiff company for the
sum of $10,000.00, with interest thereon from the date of the delivery of
said stock.   Said liability of the defendant to the plaintiff could be dis-
charged by the payment of said sum in cash out of his individual assets or
assets obtained from outside sources, or in accordance with the terms and
conditions of the agreement dated September 30, 1921, between the Hamp-
ton Roads Fire and Marine Insurance Company and Joseph B. Hecht,
which said agreement is written on the back of the stock subscription agree-
ment hereinabove referred to.

Under said agreement the defendant had the privilege of borrowing
from the plaintiff the sum of $10,000.00, to pay for the subscription to which
he had subscribed, said amount to be borrowed for a term of ten years, re-
newable for a like period.   Said loan was to be evidenced by a collateral
note made by the defendant on a form of collateral note regularly used by
the plaintiff company, said note to bear interest at the rate of six per cen-
tum per annum, but the interest as it accrued was to become a part of the
principal of said note and each item thereof to bear interest from date of
its accrual.   To said note as collateral security therefor there was to be at-
tached certain certificates for 4,000 shares of perferred stock of the Amer-
ican Southern Motors Company.   In order to take advantage of this privi-
lege and as a condition precedent thereto the defendant had to make a note
for the $10,000.00 on the terms hereinabove set out, on the regular form of col-
lateral note used by the plaintiff company, attach thereto the collateral
hereinabove referred to, and deliver such note properly made, together with
said collateral, to the plaintiff company.   The proper making of such note

assignments of error, but as the court has correctly construed the contract in the instruction given, and as there could have been no other verdict properly returned than the one reached (unless there was a waiver of the right to demand the note signed as contemplated by the agreement, by accepting the note of November 15, 1921, and this question having been submitted to the jury by the instruction, upon a conflict of the evidence, the jury's verdict is binding in this court) it is unnecessary to consider any of these assignments.

[3, 4] It is perfectly clear that the trial court rightly held that as the collateral note agreement provided that the loan should be "evidenced by a note made by the defendant on a form of collateral note regularly used by the company," and as the form of that note was made certain by attaching it to the collateral agreement, and as that form contained an option in the plaintiff that the defendant should give additional collateral security when called upon by the plaintiff, it

involved the signing thereof by the defendant at the bottom thereof, after all the printed and typewritten matter appearing on said form, and the assumption by the defendant of all the promises, terms and conditions therein contained.

Therefore, if you believe from a preponderance of the evidence that the said Joseph B. Hecht signed the subscription agreement hereinabove referred to; that not exceeding five per centum of the gross selling price of each share was used to cover the cost of organization of the Hampton Roads Fire and Marine Insurance Company; that said company accepted the subscription and issued to Joseph B. Hecht a certificate for fifty shares of the capital stock of the Hampton Roads Fire and Marine Insurance Company of the par value of $100.00 each, said certificate showing that the shares were fully paid and non-assessable, and the said Joseph B. Hecht accepted said certificate of stock, and has not paid therefor in cash and has not made and delivered to the plaintiff company a collateral note signed as hereinabove set out, together with the collateral provided for in said agreement, they should find for the plaintiff in the sum of $10,000,00, with interest thereon from the 15th day of November, 1921, until paid, unless they further believe from the evidence that the Hampton Roads Fire and Marine Insurance Company has waived its right to demand said note and has accepted the note dated November 15, 1921, introduced in the evidence as a discharge of the obligation of the defendant. The burden is on the defendant, if he relies on such a waiver or acceptance, to prove by a preponderance of the evidence.

meant exactly what it said, and the signature of the defendant at any place on the note which did not include all of its provisions, was not giving a note in compliance with the terms of the agreement.

[5] The final sentence of the agreement, "the subscriber proposes to offer 4,000 shares of the preferred stock of American Southern Motors Corporation, said shares having a present market value of $18,000.00," is not in conflict with this provision in the contract, as the defendant contends, but refers to the immediate arrangement as to collateral, and must be interpreted in the light of the other provisions of the contract.

The judgment of the trial court should be affirmed.

*Affirmed.*