# Richmond

## INTER-OCEAN CASUALTY COMPANY, A CORPORATION v. A. D. SMITH.

November 12, 1936.

Present, All the Justices.

The opinion states the case.

*Morton & Parker*, for the plaintiff in error.

*H. J. Kiser* and *O. M. Vicars*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On October 25, 1934, Raymond C. Smith, herein called the insured, made a written application to the Inter-Ocean Casualty Company, a corporation, through its agent or solicitor, R. L. McLemore, for an accident and health insurance policy, with a death benefit in the principal sum of twenty-six hundred dollars, payable in the event of his death to his brother, A. D. Smith, as beneficiary. The application for the policy was accepted, the premium thereon was duly paid, the policy dated October 30, 1934, was delivered to the insured, and it was in force at the time of his death. The policy provided against loss resulting solely from bodily injuries effected directly and independently of all other causes through accidental means, and for the payment of the principal sum in the event of loss of life from bodily injuries under such accidental means, within ninety days from the date of the ac-

cident. It is admitted that the insured, Raymond C. Smith, met with an automobile accident, receiving injuries from which he died on November 9, 1934, and it is conceded that his death resulted solely from bodily injuries effected directly and independently of all other causes through accidental means within the meaning and intent of the policy.

It further appears that the said Raymond C. Smith had, on September 25, 1932, obtained an accident and health policy from another company, The Provident Life and Accident Insurance Company, hereinafter referred to as the Provident Company, in the principal sum of three thousand dollars, naming Grace Kline, an aunt of the insured, as beneficiary in the event of death. This policy had also been solicited and obtained by the same R. L. McLemore, who was then vice-president and general manager of the Wise Insurance Agency, Incorporated, with its principal office in Norton, Virginia; that the said McLemore continued as vice-president and general manager of the said agency until about October 22, 1934, during which time he collected such quarterly renewal premiums as were paid upon that policy.

At the time the insured, Raymond C. Smith, obtained his policy with the Provident Company, his occupation was that of a truck driver and salesman for a coca-cola company. Sometime prior to September 25, 1934, which was the date on which another quarterly premium became due on the Provident policy, he changed his occupation to that of a bookkeeper for the Ford Furniture Company at Neon, Kentucky. This change of occupation from a more hazardous undertaking to that of one less hazardous, entitled the insured to a lower rate of premium. The policy issued to him by the Inter-Ocean Company gave him the benefit of the lower rate of premium. About October 22, 1934, McLemore, the agent who solicited and obtained both the Provident policy and the policy with the Inter-Ocean Casualty Company, which is the policy here sued on, discontinued his connection with the Wise Insurance Agency, and went into the insurance business on his own initiative, or as a soliciting agent for

James C. Lipps, who was at that time the agent for the Inter-Ocean Casualty Company.

The record shows that the quarterly premium due on September 25, 1934, on the Provident policy had not been paid, and that McLemore had, on at least two or more occasions, talked to the insured about his failure to make the payment, and that the insured made it plain to McLemore that he did not intend to pay said premium, nor renew said policy with the Provident Company. When McLemore left the employ of the Wise Insurance Agency about October 22, 1934, the quarterly renewal premium on the Provident policy, although it had been past due since September 25, 1934, had not been paid by the insured, or by any one at his request, or within his knowledge. The record is full and clear to the effect that the insured had no intention whatever of paying the premium, in order to keep the said Provident policy in force, and that McLemore, who had sold him the policy and had been collecting the former quarterly premiums, was so notified by the insured; and there is no evidence to controvert this as a fact. McLemore further testified that at the time he solicited the policy upon which this action is based, "We (that is, Raymond C. Smith and the witness) both knew that the policy (that of the Provident Company) had lapsed on account of the non-payment of premium."

It further appears that on November 9, 1934, after the death on that day of the insured, one E. W. Kelly, the president of the Wise Insurance Agency, called on F. B. Kline, the husband of Mrs. Grace Kline, to inquire about the accident to Raymond C. Smith, and to collect the premium due on September 25, 1934, on the Provident policy. Later in that day payment was made by Kline, and receipt issued therefor, but at a time after the actual death of the insured had occurred, and at a time when the local agency had actual knowledge of the injury and of the death of Raymond C. Smith. Kelly was also the owner of an insurance agency in Bristol called the Central Insurance Agency, with which latter company the Wise Insurance Agency made monthly settlements

of its brokerage. It appears from their records, that on September 29, 1934, in accordance with their manner of doing business, the Wise Agency made a statement and remittance to the Bristol Agency, which statement was accompanied by a check for one hundred and fifty-four dollars and five cents, purportedly including the payment of the premium due September 25, 1934, by Raymond C. Smith. The Bristol Agency accordingly made payment to its principal, the Provident Company.

The Provident policy contained the following provision with reference to default in the payment of premiums:

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy but only to cover loss resulting from accidental injury thereafter sustained and such a sickness as may begin more than ten days after the date of such acceptance."

However, after the death of Raymond C. Smith, the Provident Company, notwithstanding the situation as set out herewith respect to non-payment of the quarterly premium due September 25, 1934, made a final settlement with Mrs. Grace Kline, the beneficiary under its policy, in accordance with a pro rata payment provision, which is exactly the same in both policies, and is as follows:

"17. If the insured shall carry with another Company, corporation, association or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

It does not appear in the record whether or not the officers of the Provident Company, in making the settlement with Mrs. Kline, actually knew of the situation respecting the

handling of the premium and the delivery of a receipt therefor, or whether it was simply a compromise settlement to avoid suit.

A. D. Smith, the beneficiary in the policy taken out with the Inter-Ocean Casualty Company, after the death of Raymond C. Smith, insured, made demand for the payment of the twenty-six hundred dollars, principal sum named in the policy. The plaintiff in error here declined to make payment of the sum of twenty-six hundred dollars, and alleged that under, by virtue of, and in accordance with the provision of section 17 of its policy (the pro rata provision in the policy here under review), he was entitled to the payment only of the sum of twelve hundred and seven dollars and eighteen cents, and tendered a draft on January 21, 1935, in payment therefor. This draft was accepted by the beneficiary for the amount named, but not as a full and final settlement of the claim.

The defendant in error contended that the said Provident policy, by virtue of default in the payment of the premium due thereon, had been cancelled, and was of no legal effect either when the policy sued on was issued, or when the insured died; that his interest as beneficiary in the policy sued on could not be affected by the acts of third parties, either by intent or mistake, in giving credit for premiums not paid by himself, or paid by any one else without his authority and consent; that the policy sued on became a life policy in case of death, and if the pro rating provision be applicable otherwise, it could not apply to a death loss.

The beneficiary, A. D. Smith, then brought his action at law in the Circuit Court of Wise county, to recover of the plaintiff in error the sum of twenty-six hundred dollars, with interest thereon from the 19th day of January, 1935, subject to a credit of twelve hundred and seven dollars and eighteen cents, as of January 14, 1935, until paid, and the costs. And on July 22, 1935, in the said court, the jury rendered its verdict accordingly in favor of the plaintiff (the defendant in error here) which was sustained by the trial court.

The appellant notes six assignments of error to the action of the trial court in sustaining the verdict of the jury, but, specifically, urges consideration of only three of them.

The first error alleged was that the trial court erred in refusing to set aside the verdict for the plaintiff as being contrary to the law and to the evidence. In considering this assignment, it will be noted that the main defense relied on was that the policy sued on was governed by the pro rata payment provision contained in section 17 thereof, because the insured, in violation thereof, carried insurance covering the "same loss" in another company without giving written notice to the insurer.

This position is wholly untenable. The uncontradicted evidence fully and clearly discloses that there was no other enforceable contract of insurance covering the "same loss" in another company at the time the policy of insurance sued on was issued, nor thereafter. It can hardly be conceived, under the facts above stated, that a legal recovery could have been had by the beneficiary in the policy issued by the Provident Company.

The fact that the Provident Company had made a settlement with Mrs. Kline, the beneficiary named in its policy, ought not to be allowed, and cannot be allowed to lessen the liability of the Inter-Ocean Company to Smith, a different beneficiary in the policy issued by the latter company. It does not matter whether such a settlement was made under a mistake of law, or of fact, or in compromise, or as a gift. Smith was not a party to that settlement. He had neither the power nor duty to compel, or to prevent such settlement.

All of the evidence and every conclusion therefrom establishes a default, and an intentional default by the insured in the payment of the premium due the Provident Company. There was actual notice to the local agents and solicitors of the Provident Company, of the injury and death of the insured, before the payment of the defaulted premium and the issuance of a receipt therefor. With such knowledge before them they were without authority to bind their company for loss resulting from injury already sustained. The account-

ing made by the local agency to the Bristol agency, and through it to the Provident Company, was made, evidently, either through mistake, or in deliberate violation of the provisions of the contract of insurance, and without the consent and authority of the insured in that policy, or of his beneficiary.

Holding to this view of the evidence and the legal effect thereof, it becomes unnecessary to enter into a discussion of any other questions involved in the first assignment of error, all of which become moot questions in this case.

The next two assignments of error may be considered together, since the court gave only one instruction at the request of the plaintiff, and it is admitted that if the court was correct in giving it, there was no error in refusing the instructions offered by the defendant. The instruction given by the court was in the following language:

"The Court instructs the jury that the policy of the Provident Life and Accident Insurance Company, offered in evidence in this proceeding, does not relieve the defendant from liability to the plaintiff on the policy sued on and that they should find for the plaintiff the sum of $2600.00 with interest thereon from the 19th day of January, 1935, subject to a credit of $1207.18 as of the 14th day of January, 1935."

The appellant objected to this instruction on the ground that it was, in effect, a peremptory instruction; that it had no application to the facts shown in the case; and that it was an incorrect statement of the law applicable to the case.

This instruction assumes, as a fact, that which the uncontradicted evidence in the case fully and clearly shows. It was the duty of the court to interpret and construe the contract, and we think the trial court correctly interpreted the legal effect of the evidence, since there was no question of fact to be submitted to the jury. The effect of the evidence was to wipe out entirely all defenses, leaving only the question of law as to the legal effect of the contract of insurance with the Inter-Ocean Company.

Said this court, in *Small* v. *Virginia Ry. & P. Co.*, 125 Va. 416, 99 S. E. 525, 527: "The statute (section 6003) against

peremptory instructions is not to be construed as applying to cases in which the verdict of the jury depends necessarily and exclusively upon a question of law, such, for example, as the legal effect of a deed or contract." The cases of *Harrison* v. *Gardner Inv. Corporation*, 132 Va. 238, 111 S. E. 234, and *Realty Co.* v. *Barcum*, 129 Va. 466, 106 S. E. 375, cite with approval the ruling in *Small's Case, supra*.

Again, in *Hecht* v. *Hampton Roads, Etc., Ins. Co.*, 150 Va. 73, 142 S. E. 351, 353, it was held: "The trial court determined, and properly we think, that the whole transaction between the parties was in writing, and that so far as the writing dealt with the matter in controversy, there was no ambiguity in the writing. It therefore proceeded to construe the contract in an instruction to the jury, the practical effect of which was to direct a verdict for the plaintiff. That instruction, which was the only instruction given in the case except one as to the burden of the proof, correctly interprets the contract in our opinion."

We think that the instruction in question contains no more than a construction of the contract of insurance, and, under the facts in this case, it is not *per se* in violation of the statute (Code 1919, section 6003).

Upon the evidence here, no other verdict could have been properly rendered. If any other verdict had been rendered by the jury, it would have become the duty of the trial court to have set the same aside, and to have rendered a judgment for the plaintiff in the amount claimed.

The verdict of the jury was in accord with the evidence and the law, and we affirm the judgment of the trial court.

*Affirmed.*