WHITE TIRE DISTRIBUTORS, INC.

V.

PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY

Record No. 850705

April 22, 1988

Present: All the Justices

*William W. Terry, III (Lawrence H. Bryant; Wetherington & Melchionna*, on brief), for appellant.
*Susan Waddell Spangler (Fox, Wooten & Hart, P.C.*, on brief), for appellee.

WHITING, J., delivered the opinion of the court.

White Tire Distributors, Inc. (White) filed a motion for judgment against its insurer, Pennsylvania National Mutual Insurance Company (Penn National), seeking to recover payment for a loss under the comprehensive crime coverage endorsement Penn National had issued to White. Penn National asserted that the terms of the policy did not cover the loss. Stipulating the facts, the parties submitted the case to the trial court, and it entered summary judgment for Penn National. The case is before us on White's appeal.

Penn National provided comprehensive crime coverage to White from April 7, 1982, through November 11, 1982. Unknown to White, during the period of Penn National's coverage, an employee forged a number of checks causing a loss of $24,538.28. White obtained similar coverage from another insurance company, INA/Aetna, effective November 12, 1982, to replace Penn National's coverage. The same employee continued to forge checks during the period of INA/Aetna's coverage, causing an additional loss to White of $24,055.22. White did not discover any

of these forgeries from the two coverage periods until INA/ Aetna's period of coverage had commenced.

Each insurance policy defined a series of related criminal acts by one or more persons as "one occurrence," and provided for a maximum coverage of $20,000 for that occurrence. INA/Aetna paid $20,000 under its policy but Penn National refused to pay the $20,000 coverage of its policy.

Familiar principles guide our consideration of the issues in this case:

> Insurance policies are to be construed according to their terms and provisions and are to be considered as a whole. Where there is doubt or uncertainty and where the language of a policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer. Where two interpretations equally fair may be made, the one which permits a greater indemnity will prevail because indemnity is the ultimate object of insurance.

*Surety Corporation* v. *Elder*, 204 Va. 192, 197, 129 S.E.2d 651, 655 (1963) (citations omitted).

Penn National claims that two provisions in its policy limit White's recovery. Penn National points first to Section 12, which provides, in pertinent part, that recovery for a loss "which occurs partly during the effective period of this endorsement and partly during the period of other bonds or policies *issued by the Company* . . . shall not exceed, in the aggregate . . . the amount available to the insured under *such* other bonds or policies . . ." (Emphasis added.) We read Section 12 as indicating that Penn National intended to limit its liability for losses during successive years of *Penn National's* coverage to its maximum coverage of $20,000, but it did not do so for successive years of *another* insurance company's coverage.

Penn National next urges that paragraph C of its policy, entitled "LOSS UNDER *PRIOR* BOND OR POLICY" (emphasis added), and a similar paragraph in INA/Aetna's policy also limit its coverage. These paragraphs provide coverage for losses resulting from the fraudulent acts of White's employees discovered during the periods of their respective policy's coverage, even though those losses occurred during *previous* coverage periods of similar insurance policies provided by other insurance companies. These

paragraphs limit liability, however, to each insurer's maximum coverage for one occurrence, even though the losses in both periods exceed that insurer's coverage. Penn National says that INA/Aetna's payment of $20,000 under the policy activates this limitation.

 Penn National cannot rely upon INA/Aetna's payment to White for three reasons. First, paragraph C of the Penn National policy allocates coverage for losses resulting from conduct in a prior period, and the policy provisions do not deal at all with losses occurring *subsequent* to the policy period. Hence paragraph C is inapplicable in this case. Second, no other provision of the policy operates to make payments by an insurance company covering a *subsequent* period a limitation on Penn National's obligation to the insured. As Penn National asserts in its brief, "[t]he insurer's policy anticipates that the first insurer (Penn National) should be the first to pay the claim." Third, even if INA/Aetna mistakenly paid White, Penn National cannot reap the advantage of any such mistake; this is a matter solely between White and INA/Aetna. *See Inter-Ocean Casualty Co. v. Smith*, 167 Va. 246, 252-53, 188 S.E. 210, 212-13 (1936).

We conclude, therefore, that the trial court erred in limiting White's coverage and we will reverse that court's holding. Because the parties have agreed that $20,000 would be the amount due in the event Penn National was liable under the comprehensive crime coverage, we will enter judgment for White in that amount.

*Reversed and final judgment.*