**Nancy D. WHITE, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Defendant.**

**Civ. A. No. 88–0025–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

July 27, 1989.

L.B. Chandler and David B. Kendall, Charlottesville, Va., for plaintiff.

R. Craig Wood and S. Bernard Goodwyn, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case, originally commenced in the Circuit Court of Albemarle County, Virginia, was properly removed to this court by defendant National Union Fire Insurance Company of Pittsburgh ("National Union") pursuant to 28 U.S.C. § 1446. The parties have stipulated to the facts and agree that there are no genuine disputes as to those issues material to this action. The parties have also agreed that Virginia law applies and the court does not disagree with that conclusion. Both parties have moved pursuant to Fed.R.Civ.P. 56 for summary judgment, and the court finds that summary judgment is appropriate in this case.

I

This case revolves around a dispute as to the amount of uninsured/underinsured motorist coverage ("UM coverage") provided by a policy issued to the plaintiff's employer by National Union. As the case is one of contractual interpretation, the underlying facts are not of foremost importance; the court's description of them is, therefore, brief.

On December 17, 1984, the plaintiff Nancy D. White was employed by the Mansville Corporation ("Mansville") as a truck driver. On that date she was operating a vehicle owned by her employer within the scope of her employment. The vehicle was based in Virginia and being operated in New Jersey. On that date plaintiff was involved in an accident with a vehicle driven by Carolina M. Peace. Plaintiff was seriously injured, and a tort case arising from the accident is currently being litigated in New Jersey. Peace's insurer has apparently tendered the full limits of its policy and the New Jersey case has been stayed pending the outcome of the present action.

Mansville, a corporation with nationwide operations, was at all times relevant to this action covered by motor vehicle insurance policy BA 919 4516 issued by National Union. The policy was in effect from July 1, 1984, to July 1, 1985, and was valid in all fifty states, Canada, and Mexico. Some states, Virginia among them, require special actions concerning UM coverage. For the policy year involved in this case, Va. Code § 38.1–381(b)[1] mandated that UM

---

1. § 38.1–381(b) in effect at the time this policy was in effect stated in part:

coverage be equal to the regular liability coverage provided by the policy unless the insured specifically rejected such increased coverage. On July 26, 1984, National Union sent a letter to Frank B. Hall, Co., the agent handling the Mansville policy, for forwarding to Mansville, which purported to outline the UM coverage benefits available to Mansville in Virginia. This notice was sent pursuant to Va.Code § 38.1–380.2(B) which required insurers to notify insureds of the various levels of UM coverage available and their right to reject the otherwise mandatory higher limits.

Three options were listed on National Union's form: (A) accept the higher limits; (B) take the lowest amount allowed but no less than $60,000; and (C) reject UM coverage. For the policy year in question, and indeed for years before and since, option C was illegal in Virginia and thus unavailable. Option B was also incorrect as the minimum coverage available at the time was $25,000/$50,000. Option A was the only one on the form which was correct at the time it was issued. In any event, Melvin D. Furman, the Mansville officer in charge of insurance procurement, never selected any of the options. On August 17, 1984, he signed and dated the form but otherwise left it blank. The uncompleted form was returned to National Union and apparently incorporated into the policy folder without question.

## II

The dispute in this case centers on the amount of UM coverage provided by the policy. Plaintiff contends that since the terms of § 38.1–381(b) as to notice of rejection were not complied with, the UM coverage is therefore equal to the liability coverage (in this case $2,000,000). National Union claims that the intent of the insured

was to select the lowest coverage available ($25,000) and the contract should therefore be read in that light. There is no dispute between the parties that that was the actual intent of Mansville, and National Union seeks very strongly to have extrinsic evidence of that intent considered.

While this particular fact pattern is one of first impression in Virginia, the law in this state concerning judicial interpretation of insurance contracts in general is well settled. This court has neither "the duty nor the power to write contracts for people." *Sterling Ins. Co. v. Dansey,* 195 Va. 933, 939, 81 S.E.2d 446 (1954). Where an insurance policy is plain and clear this court is bound to adhere to its terms as the authentic expression of the parties' intentions. *See id.* And a statute which concerns the scope and effect of an insurance contract is as much a part of the contract as if incorporated into it. *State Farm Mut. Auto. Ins. Co. v. Duncan,* 203 Va. 440, 443, 125 S.E.2d 154 (1962). The plain language of this policy, coupled with Va. Code § 38.1–381(b), make the meaning of the contract abundantly clear. This court does not have the license to rewrite that document.

Va.Code § 38.1–381(b) required National Union to provide UM coverage equal to liability coverage unless Mansville rejected such coverage within 20 days of the issuance or renewal of the policy.[2] While § 38.1–381(b) did not mandate any particular form for the insured to use in making its decision, National Union undertook to provide one specifically for Virginia. Mansville did nothing with the form other than sign it and return it; it did not select any of the available options. Section 38.1–381(b) does not require any format but it does require a rejection. Where an explicit

---

[N]o ... policy or contract relating to ownership, maintenance or use of a motor vehicle shall be ... issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of § 46.101(8); provided, that such limits, after January 1, 1983,

*shall be* equal to, but not exceeding, the limits of the liability insurance afforded by such policy, *unless the insured rejects such additional uninsured motorist insurance coverage by notifying the insurer* as provided in § 38.1–380.2(B)(3).
(emphasis added).

**2.** The 20 day time limit was imposed by Va. Code § 38.1–380.2(B).

form is provided and no action is taken on it, this court is not free to assume that a rejection has occurred. Where no rejection has occurred, the mandatory provisions of § 38.1–381(b) kick in and this court is presented with a clear contract. The plain language of National Union policy BA 919 4516 coupled with Va.Code § 38.1–381(b) creates a contract which provides Mansville with UM coverage in an amount of $2,000,-000.

Even were there some doubt or ambiguity surrounding the policy *as written*, it is a "familiar principle" of Virginia law that if there is ambiguity or uncertainty as to the meaning of an insurance policy, " 'it is to be construed liberally in favor of the insured and strictly against the insurer.' " *White Tire Distrib. Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 235 Va. 439, 367 S.E.2d 518, 519 (1988), *quoting Central Sur. & Ins. Corp. v. Elder*, 204 Va. 192, 197, 129 S.E.2d 651 (1963). This rule would extend, in the present case, to require interpreting any ambiguity in favor of the beneficiary of the insured, White.

As written, and considered with § 38.1–381(b), the court sees no ambiguity with the contract itself. The election form returned unsigned by Mansville is not clearly a part of the policy; if it is, it is not a rejection. While the failure to check any of the options may make it ambiguous, such ambiguity must result in this court finding the highest possible UM coverage. *See White Tire*, 367 S.E.2d at 518. As a background to this is the fact that the uninsured motorist statute was enacted as a remedial statute and is to be liberally construed in favor of recovery for injured persons. *See State Farm Mut. Auto. Ins. Co. v. Brower*, 204 Va. 887, 892, 134 S.E.2d 277 (1964); *Grossman v. Glens Falls Ins. Co.*, 211 Va. 195, 197, 176 S.E.2d 318 (1970).

Neither the parties nor the court dispute the fact that Mansville intended to select the lowest UM coverage available. However, in a case such as this where the contract is clear and unambiguous on its face, this court may not utilize that intent to contravene or qualify that clear and unambiguous language of the contract.

Counsel raised the issue at oral argument of whether National Union may not even have had to issue the election form involved in this case since the policy was a renewal. That is water under the bridge now; the form was sent and returned, it has had its effect. That National Union might not have been required to send the form but nonetheless did, when coupled with the fact that two-thirds of the material on the form was contrary to Virginia law, indicates to this court that defendant was not well versed as of that time in the law of this jurisdiction; it must take the risks as well as the benefits of doing business in Virginia in such a fashion.

### III

In conclusion, the court finds that National Union policy BA 919 4516 in effect on December 17, 1984, provided Mansville with $2,000,000 in uninsured/underinsured motorist coverage. Summary judgment will enter for the plaintiff, Nancy D. White.