## Richmond

FIRST AMERICAN TITLE INSURANCE COMPANY

V.

SEABOARD SAVINGS AND LOAN ASSOCIATION

Record No. 811989.

April 27, 1984.

Present: All the Justices.

*David Y. Faggert (Elwood C. Isley, Jr; Scanelli and Shapiro*, on briefs), for appellant.
*Joseph L. Lyle, Jr. (Jonathan L. Hauser; Pickett, Lyle, Siegel, Drescher & Croshaw, P.C.*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is an insurance contract dispute. In 1979, James W. Wright contacted Seaboard Savings and Loan Association in an effort to secure a $60,000.00 construction loan. Wright was represented by Jay H. Zimmerman, an attorney who had represented him in previous loan transactions involving Seaboard. Seaboard approved the loan subject to the requirements, set forth in its closing instructions, that Seaboard would have a first deed of trust on the property and that the borrower would secure title insurance for Seaboard's benefit. Zimmerman, who had knowledge of Seaboard's closing instructions, asked Seaboard whether he could secure the title insurance from First American Title Insurance Company. Seaboard assented to this request.

On August 15, 1979, Zimmerman sent a preliminary title report to First American requesting a title binder, or commitment. The preliminary report certified the status of the title as of August 15, 1979, at 10:00 a.m. On the strength of the report from Zimmerman, with whom First American had previously dealt and who was on First American's approved list of attorneys, First American issued its Commitment to Issue Title Insurance No. NOR5855. The commitment was effective August 15, 1979, at 10:00 a.m. The commitment was given to Zimmerman who in turn passed it on to Seaboard, prior to the loan closing.

The language of the commitment is crucial to the proper disposition of this case. The commitment contained six separate pages stapled together. On page one it states, in pertinent part, that First American, for valuable consideration:

commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the proposed Insured named in Schedule A, . . . all subject to the provisions of Schedules A and B and to the Conditions and Stipulations hereof.

Schedule A is page two of the commitment. It identifies Seaboard as the "Proposed Insured," notes that the policy to be issued is the "ALTA Loan Policy," and lists the policy amount at $60,000.00.

Schedule B-Section 1 is page three of the commitment. It contains this statement: "The following are the requirements to be complied with. . . ." Included in the requirements were these items:

Item (c) Receipt of properly executed mechanics' lien bond of indemnity from James W. Wright and Lynn M. Wright, individually and as husband and wife.
Item (d) Receipt of satisfactory waiver of mechanics' and materialmens' liens in the event the statutory period for the filing of such liens has not expired; also satisfactions and release of record of any recorded liens.

Page five of the commitment is labeled "*Exhibit 'A'*." It was described at trial as a "pending disbursement clause." It states that "[n]o liability is assumed for claims which may result in the filing of mechanics' liens" except as set forth in Exhibit A. Among other things, subsection (a) of Exhibit A says that "sworn state-

ments of the owner and general contractor shall be provided the Title Company together with supporting releases or waiver of liens, must be furnished at the time of each disbursement relating to all work performed up to the last prior disbursement date." Subsection (b) of Exhibit A provides that, "Advances should not be made unless and until this policy is endorsed to show the Deed of Trust securing SEABOARD SAVINGS AND LOAN ASSO-CIATION in the amount of the advance."

The Conditions and Stipulations of the commitment are contained on the sixth page of the packet. Paragraphs 3 and 4 are relevant. Paragraph 3 reads in pertinent part as follows:

> Liability of the Company under this Commitment shall be only to the named proposed Insured . . . and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof. . . . In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the Insuring provisions, exclusion from coverage, and the Conditions and Stipulations of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

Paragraph 4 reads as follows:

> Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest or the lien of the insured mortgage covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this Commitment.

The evidence is undisputed that Seaboard knew of all of the foregoing prior to closing and that Seaboard voiced no objections to any of the provisions.

Zimmerman conducted the loan closing at the offices of Seaboard. Present at the closing were the Wrights; Clarence Keel, Seaboard's president; and Zimmerman. It is undisputed that at the closing, Seaboard did not secure from the Wrights a mechanic's lien indemnity bond. It is also undisputed that at the closing Seaboard did not produce properly executed releases or waivers of

mechanics' or materialmens' liens. At the closing, Seaboard disbursed $34,100.00 to the Wrights through their attorney, Jay Zimmerman. Thereafter, on September 14, 1979, and on October 15, 1979, Seaboard disbursed additional funds to the Wrights through Zimmerman. It is undisputed that when these additional disbursements were made no sworn statements were provided to First American updating the status of the title "together with supporting releases or waiver of liens"; nor were endorsements made to the commitment reflecting the advances.

After the closing, Zimmerman sent papers to First American which stated that all conditions for the issuance of the policy had been met and which requested that First American issue a final policy. Upon reviewing the file, an underwriter at First American noticed that the indemnity bond and the releases and waivers of liens were not present. The underwriter made four telephone calls to Zimmerman requesting the missing indemnity bond and lien waivers. Two calls were made in September 1979 and one each in October and November 1979. Despite these requests, the indemnity bond was never provided and no lien waivers or releases of liens were provided until after one of the Wrights' materialmen had filed a mechanic's lien. As a result, a final policy was never delivered to Seaboard.

On November 9, 1979, Kempsville Building Materials, Inc., filed its lien against the Wrights' property. Seaboard notified First American, demanding a defense and claiming that First American was liable. In February 1980, Kempville sued to enforce its lien. First American defended under reservation of right to deny coverage.

First American then filed a suit for declaratory judgment in which it asked the court to declare whether it was liable to Seaboard "in any way for any losses suffered by Seaboard in regard to its Loan on the Property." The trial court ruled in favor of Seaboard, concluding that First American was liable under the commitment to defend the Kempsville suit and for the mechanics' liens therein established. First American appealed, claiming that Seaboard had violated the terms and conditions of the commitment, thus relieving First American of liability. We agree with First American's contentions. Therefore, we will reverse the judgment of the trial court and enter final judgment for First American.

The trial court concluded that *Seaboard had no rights under the policy* because it had failed to meet the conditions precedent to the issuance of the policy. However, the trial court went on to conclude that even though First American had no liability under the policy, it was *liable under the commitment to issue the policy*. The trial court based its ruling upon language contained in paragraph 3 of the Conditions and Stipulations of the commitment. The court emphasized the language in the first sentence of that paragraph which reads as follows: "*Liability* of the Company *under this Commitment* shall be only to the named proposed Insured . . . and only for actual loss incurred in reliance hereon in undertaking in good faith . . . to comply with the requirements hereof. . . ." (Emphasis added.) Based on this sentence, the trial court ruled that if Seaboard relied on the commitment in undertaking in good faith to comply with the requirements of the commitment, then First American would be liable to Seaboard even though Seaboard had not complied with any of the conditions and requirements of the policy. The court then concluded that Seaboard met this good faith requirement when it "instructed Jay H. Zimmerman that loan proceeds were to be advanced only when secured by a first lien deed of trust which was insured to be such a first lien by a title insurance company." On this basis the trial court held First American liable under the commitment.

First American contends that the trial court has not taken into consideration the entire commitment and has, as a consequence, ignored language which makes clear that First American cannot be held liable in these circumstances. First American submits, and we agree, that the trial court's disposition of this dispute runs counter to familiar principles concerning construction of insurance contracts. In *Quesenberry* v. *Nichols and Erie*, 208 Va. 667, 670, 159 S.E.2d 636, 638 (1968), we stated that in construing a contract a court must "read the contract as a single document, the meaning of which is gathered from all its associated parts when assembled as the unitary expression of the agreement of the parties." In that same opinion we quoted with approval from a Maryland opinion which states as follows concerning construction of insurance contracts:

"A policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of

authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but *this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties. . . .*"

*Id.* at 672, 159 S.E.2d at 640 (quoting from *Aviation Employees Insurance Co.* v. *Barclay*, 237 Md. 318, 323, 206 A.2d 119, 121 (1965)) (emphasis added).

In keeping with the above-stated principles, the trial court was bound to give effect to the last sentence in paragraph 3 of the Conditions and Stipulations of the commitment. That sentence, which is part of the same paragraph relied on by the trial court in imposing liability upon First American, states that "such liability is subject to the Insuring provisions, exclusion from coverage, and the Conditions and Stipulations of the form of policy . . . committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment *except as expressly modified herein.*" (Emphasis added.) The trial court mentioned this language but concluded that it provided no bar to recovery by Seaboard. That conclusion was in error. The effect of the quoted language is to make the form policy, in this case the ALTA Loan Policy, *as modified*, part of the commitment. In other words, this language meant that there could be no greater liability under the commitment than that which existed under the form policy, as modified.

As noted, the trial court concluded that the form policy contained nothing to prevent Seaboard's recovering thereunder. That may be true with regard to the form policy in its unmodified version. However, in this case, the form policy was modified by Exhibit A, which was included in the commitment packet. Seaboard argued that Exhibit A had no meaning whatsoever and was to be disregarded. According to Seaboard, it was not part of the commitment because the commitment made no reference to it and it made no reference to the commitment. Seaboard went on to say that Exhibit A was not part of the policy because neither Exhibit A nor the form policy states that it is. The court accepted Seaboard's argument regarding the status of Exhibit A and concluded as follows:

Included within the pages constituting the Commitment is a page entitled "Exhibit A." This exhibit is nowhere referred to within the Commitment, repeatedly in its terms refers to "this *policy*," and presumably is attached to provide notice of what the *policy* will provide with respect to mechanics' liens. . . .

The Court is of the opinion that Exhibit A has no effect upon the insuring provisions of the Commitment. . . .

Only by disregarding Exhibit A was the trial court able to conclude that the form policy contained nothing to bar liability on First American's part.

In our opinion, however, Exhibit A cannot be disregarded. In *State Farm Mut. Etc., Ins. Co.* v. *Justis*, 168 Va. 158, 167, 190 S.E. 163, 167 (1937), we made clear that language in an insurance contract cannot simply be ignored; there we wrote as follows concerning a particular provision which one party urged us, in effect, to disregard:

Some force and effect must be given to this language, as it is the duty of the court to construe the contract as a whole, and *in the performance of this duty it will not treat as meaningless any word thereof, if any meaning, reasonably consistent with other parts of the contract, can be given. Smith* v. *Ramsey*, 116 Va. 530, 82 S.E. 189, 15 A.L.R. 32. In *Tate* v. *Tate's Ex'r*, 75 Va. 522, 527, this rule is expressed thus: "In the interpretation of written contracts, every part of the writing must be made, if possible, to take effect, and *every word of it must be made to operate in some shape or other.* And, where all other rules of construction fail, the words of the covenant must be construed most strongly against the covenantor."

(Emphasis added.) In the subsequent case of *Pilot Life* v. *Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143, 146 (1965), we stated that we will not rewrite insurance contracts to impose upon an insured liability that was not assumed by it:

Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, we are bound to adhere to their terms. It is the function of the court

to construe the language of the contract as written, and *the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer.*

(Emphasis added.)

In this case, we think it plain that Exhibit A was intended to have effect. It was stapled in with the commitment papers; it specifically refers to Seaboard; it mentions the policy, in obvious reference to the policy that was to be issued; and it clearly relates to one of the provisions of the policy, that is, protection against mechanics' and materialmen's liens. Further, counsel for Seaboard and the trial court both acknowledged, albeit in an oblique manner, that Exhibit A was meant to modify the language of the form policy concerning liability for mechanics' liens. The court stated in its letter opinion that Exhibit A "presumably is attached to provide notice of what the *policy* will provide with respect to mechanics' liens." On brief, Seaboard's counsel wrote as follows with regard to Exhibit A:

Presumably, Exhibit "A" was attached to the Commitment because it was a new term of the standard ALTA policy. . . . Perhaps First American felt that it was necessary to distribute this special addition to the policy in order to apprise potential insureds of the full terms of the ultimate policy.

In oral argument he said, "You may infer that Exhibit A was an effort to modify the form policy." It is apparent that Seaboard has attempted to have Exhibit A declared meaningless while acknowledging that it must have meaning.

We conclude that Exhibit A does exactly what the court and counsel presumed it does. It operates to modify the language in the form policy regarding liability for mechanics' liens. Paragraph 7 of the form ALTA Policy of Title Insurance provides for protection against mechanics' liens. Exhibit A states that that protection will not be afforded absent compliance with its terms. Thus, pursuant to paragraph 3 of the Conditions and Stipulations in the commitment, the entire form policy, as modified, is part of the commitment. Since Exhibit A modifies the form policy, Exhibit A is itself part of the commitment. The result of this is that unless the terms of Exhibit A are complied with there can be no

liability under paragraph 3 of the Conditions and Stipulations in the commitment. Here, it is undisputed that the requirements of Exhibit A were not met. It follows then that First American has no liability to Seaboard.

For all the foregoing reasons, the judgment appealed from will be reversed and final judgment entered for appellant.

*Reversed and final judgment.*