**Julie B. GREENBAUM, Plaintiff,**

v.

**The TRAVELERS INSURANCE COMPANY, Defendant.**

**Civ. A. No. 88–0534–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 12, 1989.

Frank Cowan, Cowan and Owen, P.C., Richmond, Va., for plaintiff.

Edward H. Starr, Jr., Mays & Valentine, Richmond, Va., for defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

In this insurance coverage dispute, Julie B. Greenbaum [1] (Greenbaum) is seeking indemnity from The Travelers Insurance Company (Travelers). Greenbaum alleges in her complaint that Travelers insured Roy Sutton, Jr. (Sutton, Jr.) under an automobile liability insurance policy, that a judgment of $425,000 has been entered against Sutton, Jr. in favor of Greenbaum, and that Travelers has wrongfully refused to provide coverage for Sutton, Jr.'s legal liability. Greenbaum filed this action in state court and Travelers removed it pursuant to

---

1. Pursuant to a settlement agreement, United Services Automobile Association obtained the right to bring this action in Greenbaum's name, and it is so doing.

28 U.S.C. § 1441(a) (1985). Jurisdiction is premised upon diversity of citizenship. 28 U.S.C. § 1332(a) (1985).[2]

This matter is now before the court on Travelers' motion for partial summary judgment to cap damages at $150,000, Greenbaum's motion for partial summary judgment on the policy against Travelers for $150,000, and Travelers' cross motion for summary judgment. The issues presented are (1) whether the business automobile liability policy in question provided coverage for Sutton, Jr., and (2) assuming coverage is afforded, whether Greenbaum's recovery under the policy should be limited to $150,000 pursuant to Va.Code Ann. § 8.01–35.1 (Repl.Vol.1987).[3]

## I.  FACTS

On May 11, 1985, Sutton, Jr. borrowed an unregistered Jaguar owned by his father, Roy V. Sutton, Sr. Travelers claims that Sutton, Jr. borrowed this automobile without permission. Travelers further alleges that Sutton, Jr. began racing the Jaguar against a car driven by Scott Halloran (Halloran) and that during this race, Sutton, Jr. collided with Greenbaum's car on Sleepy Hollow Road in Henrico County, Virginia. Greenbaum was seriously injured in the accident.

Greenbaum sued Sutton, Jr. and Halloran in state court, alleging that both were negligent in causing the accident. During the second day of trial, Greenbaum voluntarily moved to nonsuit the action against Halloran. The jury was then dismissed and the parties submitted the matter to the court for determination. On December 11, 1986, the trial judge rendered a verdict in favor of Greenbaum against Sutton, Jr. and awarded $425,000 in compensatory damages. The court entered judgment on January 27, 1987.

The interested parties and their insurers entered into three somewhat overlapping agreements following the verdict. In the first agreement, The Aetna Casualty and Surety Company (Aetna), Greenbaum's insurance carrier, agreed to pay Greenbaum $150,000 under her uninsured motorist coverage.

Greenbaum, Sutton, Jr., Aetna, and United Services Automobile Association (USAA) entered into a second, primary settlement agreement, under which Aetna agreed to pay $150,000 under Greenbaum's uninsured motorist coverage pursuant to the first agreement. Additionally, Sutton, Jr. agreed to pay $2,500, and USAA, Halloran's liability carrier, agreed to pay $272,500 to Greenbaum. Greenbaum assigned her rights against Sutton, Jr. to Aetna to the extent of Aetna's uninsured motorist payment, and Aetna assigned its subrogation rights to USAA. Greenbaum and Aetna also assigned to USAA all rights to pursue satisfaction of the judgment under any insurance policy which potentially provided coverage. USAA agreed to pay to Greenbaum any sum it collected in excess of the $272,500 it paid on behalf of Halloran, less costs and expenses. The agreement did not release Sutton, Jr.; however, Halloran and his parents were released from any liability regarding the accident.

In a third agreement, Greenbaum assigned to USAA her right to collect the judgment against Sutton, Jr. Greenbaum also agreed to allow USAA to pursue satisfaction of the judgment in her name.

---

**2.** In this diversity action, this court is required to apply the substantive law of Virginia governing the action. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Furthermore, Virginia's choice of law rules determine the substantive law to be applied in interpreting the contract. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Absent provisions to the contrary, contract interpretation in Virginia is governed by the law of the place where the contract was made. *C.I.T. Corp. v. Guy,* 170 Va. 16, 22, 195 S.E. 659, 661 (1938). Thus, Virginia law governs the contract interpretation in this case.

**3.** The two questions presented are issues of first impression which the Supreme Court of Virginia has not had occasion to address. Therefore, this court must decide the law "as it appears the highest court of the state would rule," *Brendle v. General Tire and Rubber Co.,* 505 F.2d 243, 245 (4th Cir.1974), or as the court believes Virginia's highest courts would decide the law. *Hatfield v. Palles,* 537 F.2d 1245, 1247 (4th Cir.1976).

USAA is now pursuing indemnification from Travelers in Greenbaum's name.

Greenbaum seeks coverage under the automobile liability section of a special business policy issued by Travelers. The named insured, as it appears on the general declarations page, is "ETC GROUP, ROY V. SUTTON, HENRY M. SIBLEY AND FRANK B. BRADLEY, DBA." The named insured is signified as a partnership by an "X" marked in a box.

The policy provides that Travelers "will pay all sums the *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto.*" (emphasis in original).

To determine who is an insured, reference must be made to certain definitions contained in the policy. An *"insured"* means "any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance." Under "WHO IS INSURED," the policy provides: *"You* are an *insured* for any covered *auto* " and "[a]nyone else is an *insured* while using with permission a covered *auto you* own, hire or borrow...." *"You"* and *"your"* mean "the person or organization shown as the named insured in ITEM ONE of the declarations." "Covered autos" are defined as *"OWNED AUTOS ONLY.* Only those *autos you* own...." (All emphasis above in the original). In summary, the policy affords coverage for the named insured and permissive users while driving an auto owned by the person or organization named in the declarations, without regard to whether the vehicle is scheduled in the policy.

The primary point of contention between Greenbaum and Travelers concerns an "Individual Named Insured" endorsement. This endorsement provides:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### INDIVIDUAL NAMED INSURED

If *you* are an individual, the policy is changed as follows:

. . . . .

**B. CHANGES IN LIABILITY INSURANCE**

. . . . .

**2. PERSONAL AUTO COVERAGE**
While any *auto you* own of the *private passenger type* is a covered *auto* under the LIABILITY INSURANCE:
a. The following is added to WHO IS INSURED:
   *Family members* are *insureds* for any covered *auto you* own of the *private passenger type* and any other *auto* described in paragraph 2.b. of this endorsement.

Under this endorsement, a *"family member"* is defined as a "person related to *you* by blood, marriage or adoption who is a resident of *your* household...." A *"private passenger type"* auto includes "any covered *auto you* own ... not used for business purposes, other than farming or ranching."

### II. SUMMARY JUDGMENT ON THE POLICY [4]

Resolution of this coverage issue depends upon whether Sutton, Sr. is a named insured and therefore within the definition of *"you"* in the individual named insured endorsement. If Sutton, Sr. is a named insured, the individual named insured endorsement afforded coverage for Sutton, Jr. while he was driving a vehicle owned by Sutton, Sr., without regard to permissive use because Sutton, Jr. was a resident of Sutton, Sr.'s household on the date of the accident. Travelers and Greenbaum have

---

**4.** This matter may appropriately be resolved on the cross motions for summary judgment. A fact finder would be bound to construe the contract language strictly against Travelers and a fact finder so "constrained could reasonably interpret the provision[s]" of the insurance contract only as the court will. *See Atlantic Permanent Federal Savings and Loan Ass'n v. American Casualty Co.,* 839 F.2d 212, 217 (4th Cir.) *cert. denied,* — U.S. —, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988).

advanced alternative arguments which the court will address in turn.

It is the court's duty to ascertain and effectuate the intent of the parties when construing and interpreting a contract. *Jackson v. North American Assurance Society*, 212 Va. 177, 179, 183 S.E.2d 160, 161 (1971). In order to ascertain this intent, the court will be guided by familiar and well established rules governing insurance contract construction.

> Insurance policies are to be construed according to their terms and provisions and are to be considered as a whole. When there is doubt or uncertainty and where the language of a policy is susceptible to two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer. Where two interpretations equally fair may be made, the one which permits a greater indemnity will prevail because indemnity is the ultimate object of insurance.

*White Tire Distributors, Inc. v. Pennsylvania National Mutual Casualty Insurance Co.*, 235 Va. 439, 441, 367 S.E.2d 518, 519 (1988) (quoting *Central Surety & Insurance Corp. v. Elder*, 204 Va. 192, 197, 129 S.E.2d 651, 655 (1963)).

An insurance contract must be read "as a single document, the meaning of which is gathered from all of its associated parts when assembled as the unitary expression of the agreement of the parties." *First American Title Insurance Co. v. Seaboard Savings and Loan Ass'n*, 227 Va. 379, 384, 315 S.E.2d 842, 845 (1984) (citation omitted). The court may not selectively ignore provisions of an insurance contract.

> Some force and effect must be given to [particular provisions], as it is a duty of the court to construe the contract as a whole, and in the performance of this duty it will not treat as meaningless any word thereof, if any meaning, reasonably consistent with other parts of the contract, can be given.

*Id.* at 386, 315 S.E.2d at 846 (citation omitted) (emphasis deleted).

Greenbaum first contends that Sutton, Sr. is unambiguously listed as a named insured on the declarations page of the policy. Therefore, Sutton, Jr. is entitled to coverage by virtue of being a resident of Sutton, Sr.'s household and driving a vehicle owned by Sutton, Sr. Greenbaum argues that if the ETC Group is the sole intended named insured, the addition of the individual named insured endorsement makes little sense because partnerships do not have family members, relatives or households. Therefore, Greenbaum argues, if the entire policy is to be given meaning, Sutton, Sr. must be considered a named insured.

Travelers argues that the policy does not provide individual coverage for Sutton, Jr. because the named insured is singularly the partnership entity and the policy covers only those autos owned by the ETC Group. Travelers contends that the individual named insured endorsement applies only "if *you* are an individual." "*You*" is defined in the endorsement as the person or organization shown as the named insured in the declaration page, which Travelers maintains is unambiguously the ETC Group. Travelers also contends that Va. Code Ann. § 38.2–2218 (Repl.Vol.1986) requires the attachment of the named insured endorsement to the policy. Thus, the endorsement is perfunctory, and its presence does not evince an intent that the partners, including Sutton, Sr., should be covered individually.

■ Travelers' inclusion of the individual named insured endorsement presents an interesting quandary. If the sole named insured is the partnership entity ETC Group, then one must ask why the endorsement was included. Section 38.2–2218 merely provides that the State Corporation Commission shall prepare a standard form when it believes that a form is so extensively used that a standard form is desirable. The statute does not require that the individual named insured endorsement be appended to all business auto policies. The Virginia General Assembly has provided that automobile liability policies must contain certain provisions before they are issued. *See, e.g.*, Va.Code Ann. § 38.2–2200 (required provisions as to insol-

vency of insurer); Va.Code Ann. § 38.2–2202 (required notice of optional coverages available); Va.Code Ann. § 38.2–2204 (omnibus clause). However, the court has been cited to no authority and indeed has found none requiring an individual named insured endorsement. Thus, Travelers' argument that the endorsement is mere surplusage it was required to attach to each business automobile liability policy it issued is without merit.

Travelers' contention that the introductory language of the endorsement qualifies the applicability of the endorsement and precludes its activation because the named insured is the ETC Group, not an individual, is equally without merit. This argument begs the question and presupposes that the named insured is the ETC Group solely.

In *Ohio Casualty Insurance Co. v. Fike,* 304 So.2d 136 (Fla. Dist.Ct.App.1974), the court faced an analogous issue. The insurer issued a policy designating the named insured as two individuals doing business as a company and the declaration page denoted the insured as a partnership. An endorsement to the policy provided coverage for "the named insured or any relative." The insurer argued that the policy covered only the partnership as named insured and consequently any relative was not entitled to benefits. The court concluded however that the policy was intended to cover the named insured in an individual as well as a partnership capacity. The court stated:

> The fact that the defendant insurer issued an amendatory endorsement to the policy in question which provided personal injury protection to "the named insured *or any relative*" seems inapposite to the insured's [sic] position that the policy in question was intended to be limited to a "partnership"; if anything, the amendatory endorsement is reflective of an intention to insure the *individual* as well as the partnership.

304 So.2d at 137 (emphasis in original) (footnote omitted).

The addition of the individual named insured endorsement to the policy providing coverage to the named insured's family members seems contradictory to Traveler's contention that the policy insures only the ETC Group. Rather, the presence of the endorsement leads the court to conclude that the policy was intended to provide coverage for Sutton, Sr. in an individual as well as a partnership capacity. Moreover, the fact that all the vehicles driven and used by Sutton, Sr. and his family at the time of the accident were owned by the ETC Group and scheduled under the policy reinforces the conclusion that the individual named insured endorsement was intended to extend coverage to Sutton, Sr.'s family members under the policy. *See Nationwide Mutual Insurance Co. v. United States Fidelity and Guaranty Co.,* 529 F.Supp. 194, 198 (E.D.Pa.1981) (the fact that partners and their wives were provided liability coverage for the use of partnership automobiles evidenced an intent that the insurer intended to insure the partners as individuals); *Fike,* 304 So.2d at 137 (the fact that insurance policy lists family vehicles as well as business vehicles supports the conclusion the policy is intended to provide individual coverage to partners).

The rules of contract construction lead the court to conclude that Travelers intended to provide coverage for the partners in an individual as well as a partnership capacity. Travelers drafted the named insured as it appears on the declarations page. If Travelers intended to insure only the partnership entity, it could have written the named insured to reflect this intent or could have drafted provisions in the policy to clearly exclude individual coverage. Having failed to do so, Travelers cannot now rewrite a policy it issued in hopes of avoiding the terms of an instrument it drafted. *See Carey v. State Farm Mutual Insurance Co.,* 367 F.2d 938, 941–42 (4th Cir.1966).

Furthermore, the court must give meaning and effect to the individual named insured endorsement as an integral part of the agreement between the parties. Having appended the endorsement to the policy, Travelers cannot be allowed to now argue it is meaningless. The court there-

fore holds that Sutton, Sr. is named as an insured, and consequently, the policy affords liability coverage to Sutton, Jr. under the individual named insured endorsement.

Alternatively, Greenbaum argues that designation of the named insured is ambiguous, and under the rules governing insurance contract construction, the court should resolve the ambiguity in her favor. Travelers maintains that if the court finds the policy to be ambiguous, the intent of the parties should govern, and that this intent should be ascertained through evidence, so summary judgment is inappropriate. However, summary judgment is appropriate in this case because a fact finder would be constrained by the rules of construction to construe any ambiguity against Travelers.

■ "An ambiguity exists when language admits to being understood in more than one way or refers to two or more things at the same time." *Lincoln National Life Insurance Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 136–37, 327 S.E.2d 98, 101 (1985) (citations omitted). Courts have disagreed on whether a policy which designates both the individual partners and the partnership entity on the declaration page as named insureds presents an ambiguity. *Compare Fidelity & Casualty Co. v. Swayzer*, 583 S.W.2d 850, 852 (Tex.Ct.App.1979) (designation of named insured as individuals d/b/a a partnership is unambiguous) *with Nationwide Mutual Insurance Co. v. United States Fidelity & Guaranty Co.*, 529 F.Supp. at 198 (phrase designating named insured as individuals trading as business is "ambiguous in that reasonable individuals could differ as to whether this provision designates the partnership, the individuals, or both as named insured").

When considered in the context of the entire policy, including the individual named insured endorsement, the named insured designated on the declarations page may reasonably be understood as the partnership, the individual partners, or both. Thus, the designation of the named insured is ambiguous.

Giving Travelers the benefit of the doubt that at best, the manner in which the named insured is designated is ambiguous does not change the result. When contract provisions are ambiguous, they are to be construed strictly against the insurer and in favor of the insured. "[W]here the policy is susceptible to two constructions, ... the court will adopt that construction which will afford coverage." *Lincoln National Life*, 229 Va. at 137, 327 S.E.2d at 101. Consequently, the Court holds that under these contract principles, Sutton, Sr. is a named insured and Sutton, Jr. is afforded liability coverage under the terms of the policy.

### III. MOTION TO CAP DAMAGES

No Virginia court has directly addressed the issue whether the amounts paid by a settling party for a release or covenant not to sue must be credited toward a plaintiff's award against another party, where the settling party's status as a joint tort-feasor has not been judicially established. Whether Travelers is entitled to a credit based on sums paid by USAA depends upon interpretation of Va.Code Ann. § 8.01–35.1 (Repl. Vol.1987), which provides in pertinent part:

A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury ...:

1. It shall not discharge any of the other tort-feasors from liability for the injury ... but any ... amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is greater.... A release or covenant not to sue given pursuant to this section ... shall be considered by the court in determining the amount for which judgment shall be entered.

By enacting § 8.01–35.1, the General Assembly intended to promote the settlement of claims and to lessen the harsh result of the common law "release of one is a release of all" rule. *State Farm Mutual Automobile Insurance Co. v. Reynolds*,

676 F.Supp. 106, 107–08 (W.D.Va.1987). "The statute facilitates prompt settlement, payment, and discharge of paying tort-feasors without releasing those non-paying joint tort-feasors *who prefer to have their liability determined in litigation,* with its attendant delays." *Hayman v. Patio Products, Inc.,* 226 Va. 482, 487, 311 S.E.2d 752, 756 (1984) (emphasis added).

The relevant portion of the statute provides that "the amount recovered against other tort-feasors at trial shall be reduced by any amount stipulated" in the release or covenant given to the settling party. *Bartholomew v. Bartholomew,* 233 Va. 86, 87, 353 S.E.2d 752, 753 (1987); *see also Lemke v. Sears, Roebuck & Co.,* 853 F.2d 253, 255 (4th Cir.1988) ("[A] non-discharged tort-feasor may claim a setoff based on any sums paid by another to obtain a release....").

Travelers argues that under § 8.01–35.1, any amount Greenbaum recovers from other "tort-feasors" · must be credited to Greenbaum's judgment against Sutton, Jr. Thus, Travelers contends the $425,000 judgment against Sutton, Jr. must be credited with the $272,500 payment by USAA, along with the $2,500 Sutton, Jr. paid directly to Greenbaum, making a total credit of $275,000. Sutton, Jr.'s remaining potential liability is therefore reduced to $150,-000. Greenbaum argues that the set off provision of § 8.01–35.1 applies to joint tort-feasors only. Because Halloran was not adjudicated a joint tort-feasor, Sutton, Jr. is not entitled to a credit for sums paid by USAA.

Although the present issue was not addressed, in *Thurston Metals & Supply Co. v. Taylor,* 230 Va. 475, 339 S.E.2d 538, (1986), the Supreme Court of Virginia declined to limit the application of § 8.01–35.1 to joint tort-feasors. The court noted that the term "joint tort-feasors" is not contained in the substantive language of the statute. The court therefore extended application of the statute to those vicariously liable as employers. *Id.* at 483, 339 S.E.2d at 543. Significantly, the court upheld the trial court's order granting a credit on the verdict, even though an order of nonsuit dismissing the plaintiff's action against the settling individual defendant was entered on the morning of trial. Thus, a credit was allowed even though the settling party was not adjudicated a joint tort-feasor. *Id.* at 485, 339 S.E.2d at 544.

The prevailing view is that "a credit is allowed to diminish the amount of damages recoverable ... even where the person released was not in fact a joint tort-feasor [sic], or was not liable to the plaintiff at all." W. Prosser & W. Keeton, *The Law of Torts,* § 49 (5th ed. 1984). *See Layne v. United States,* 460 F.2d 409, 411 (9th Cir.1972) (applying Alaska law); *Steger v. Egyud,* 219 Md. 331, 341–42, 149 A.2d 762, 767–68 (1959) (applying New Jersey law); *Thick v. Lapeer Metal Products Co.,* 419 Mich. 342, 348–49, 353 N.W.2d 464, 466 (1984); *Holland v. Southern Public Utilities Co.,* 208 N.C. 289, 292, 180 S.E. 592, 593–94 (1935). Thus, a settling party's joint liability need not be judicially established for the non-released tort-feasor to receive a credit against the verdict. For the reasons which follow, the court holds that the amount paid by a party toward settlement, regardless whether the released party is in fact a joint tort-feasor, is to be credited toward the total recovery of the plaintiff.

Accepting Greenbaum's argument leads to an anomalous result contrary to the manifest intent of the statute. Anytime an alleged joint tort-feasor settles with a plaintiff prior to trial, the settling party's liability is not judicially established. Absent an admission of liability, the settling party's liability would have to be relitigated to determine whether the plaintiff must accept a set off. Relitigation would thwart one of the primary policy justifications underlying the statute—prompt settlement of claims without litigation. *Layne,* 460 F.2d at 411.

Moreover, allowing Greenbaum to recover the entire amount of the judgment, less the $2,500 paid by Sutton, Jr., would violate the Virginia common law doctrine of accord and satisfaction. Notwithstanding whether Sutton, Jr. and Halloran were joint tort-feasors, Greenbaum is entitled to only one satisfaction for a single cause of action because her injuries were indivisible. *See Cauthorn v. British Leyland, U.K., Ltd.,* 233 Va. 202, 204–05, 355 S.E.2d 306, 307–08

(1987) (application of the rule of accord and satisfaction does not depend upon the relationship of the parties as joint tort-feasors; foundation of rule is based on the principle that a plaintiff is "entitled to but one satisfaction for the same cause of action").

Greenbaum has received $425,000, which represents the entire verdict against Sutton, Jr. Pursuant to the agreement between Greenbaum, Sutton, Jr., Halloran, and the insurers, Greenbaum will receive anything over the $272,500, less expenses and costs, which USAA recovers in the present action. Greenbaum is entitled to be compensated only once for her injuries and when she has received satisfaction, "whether or not the released party is in fact jointly liable with the defendant against whom judgment is rendered is not relevant." *Layne*, 460 F.2d at 411.

The court holds that pursuant to § 8.01–35.1, the amounts recovered under a release or a covenant not to sue shall reduce the plaintiff's judgment against another by the amount stipulated in the covenant or release, irrespective of whether the settling party is in fact a joint tort-feasor. The amount paid by USAA on behalf of Halloran for Halloran's release must be credited to the Greenbaum's total recovery. Accordingly, Traveler's motion to cap damages recoverable under the insurance policy at $150,000 will be granted.

An appropriate order shall issue.

### FINAL ORDER

For the reasons stated in the accompanying memorandum opinion, the Court hereby GRANTS plaintiff's motion for partial summary judgment, GRANTS defendant's motion for partial summary judgment to cap damages, and DENIES defendant's motion for summary judgment. The Court hereby ORDERS that judgment is entered on behalf of the plaintiff against the defendant in the sum of One Hundred Fifty Thousand ($150,000.00) Dollars.

And it is so ORDERED.