962 F.2d 7
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NORTON 72 LIMITED PARTNERSHIP; Phillip G. Norton, General
Partner; Phillip G. Norton, Limited Partner;
Patricia A. Norton, Trustee, Limited
Partner; Phillip G. Norton,
Plaintiffs-Appellants,
v.
RESOLUTION TRUST CORPORATION, In its capacity as receiver of
United Federal Savings Bank, Defendant-Appellee.
 No. 91-1658.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 6, 1992
Decided: May 13, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-90-1414-A)
 Before HALL and LUTTIG, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 Michael Edward Geltner, Washington, D.C., for Appellants.
 Ralph Peyton Mahaffey, Miles & Stockbridge, Fairfax, Virginia, for Appellee.
 Mark E. Bettius, Eric J. Berghold, Miles & Stockbridge, Fairfax, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED
 PER CURIAM:
 
 
 1
 This is an appeal from the district court's dismissal of this case under Rule 41(b), and denial of a motion to amend or alter judgment under Rule 59(e), Fed. R. Civ. Proc. United Federal Savings Bank ("United"), the defendant below, presently is under conservatorship of the Resolution Trust Corporation ("RTC"), which status conferred original jurisdiction upon the district court. 12 U.S.C. § 1441a(a)(11).
 
 
 2
 Norton 72 Limited Partnership ("Norton 72"), the plaintiff below, owns land in Virginia subject to a note and deed of trust executed in April 1987 and held by United. Paragraph 9.1 of the deed of trust provides under certain circumstances* for a partial release-a release of portions of the land from United's deed of trust lien. Following condemnation of some of the land and a title insurance settlement, Norton 72 in December 1988 and November 1989 made interest and principal payments of $5.15 million to United, thereby reducing the original principal balance of $12.75 million. In September 1989, appellants approached the RTC and sought a partial release of 18.8833 acres under the deed of trust. The RTC refused.
 
 
 3
 On October 18, 1989, Norton 72 brought the action below for specific performance. It submitted on October 24, a plat setting forth its plan for the development of the land, and on October 31, a plat showing the property sought to be released. The district court granted partial summary judgment in favor of Norton 72, ruling that the $5.15 million in payments could be taken into account to satisfy the payment requirement of paragraph 9.1 of the deed of trust. The court also scheduled a bench trial on the factual issue of whether Norton 72 had submitted an "orderly plan for development of the Land," as required by the same paragraph in the deed of trust. On January 15, 1990, prior to the trial, Norton 72 submitted a second proposed release plat in response to criticisms of the first release plat by the RTC. A month later, after the discovery cutoff, Norton submitted additional drawings. Finally, on March 1, 1990, Norton 72 defaulted under the terms of the note and loan documents.
 
 
 4
 At trial, the district court overruled the RTC's motion to dismiss for mootness on grounds of Norton 72's default, but refused to consider the drawings submitted by Norton 72 after discovery had ended. Norton 72 presented its case at trial, and rested. Upon a Rule 41(b) motion, the Court then dismissed the case. Ruling from the bench, it found that the RTC had never approved the plan in writing as required by the deed of trust. It also held that Norton 72 had failed to submit an orderly plan of development, and added that even if the plan could be considered orderly, the proposed releases were inconsistent with lot and zoning lines in the plan. Norton 72 filed a motion under Rule 59(e), to amend or alter judgment to allow Norton 72 to submit new documents to meet the orderly plan requirement of the deed of trust. On June 14, 1991, the court denied Norton 72's motion.
 
 
 5
 The principal issue raised on this appeal is whether the district court erred in ruling that something more than the mere payment of money was required to create an enforceable right in Norton 72 to have the land released from the deed of trust.
 
 
 6
 We recognize that Maryland case law, on which the appellant relies, has concluded that the payment of the contractually appropriate sum of money "vests" a right in the landowner to require a partial release of land. Burroughs v. Garner, 405 A.2d 301, 314-15 (Md. App. 1979). This suggests that under Maryland law other conditions may be merely ministerial. See id. However, this case is to be decided under Virginia law, and, while the court has found no case precisely on point, it is apparent that in this contract dispute Virginia law would not interpret the deed of trust as distinguishing between a "vesting act" and "ministerial acts." Rather, Virginia case law indicates that all of the provisions of a contract must be taken so as to make an harmonious whole. E.g., Paramount Termite Control v. Rector, 380 S.E.2d 922, 925 (Va. 1989); First American Title Ins. Co. v. Seaboard Sav. & Loan, 315 S.E.2d 842, 846 (Va. 1984).
 
 
 7
 Although Norton 72 argues that the "heart" of the right to partial release is the payment condition, our review of Paragraph 9.1 of the deed of trust reveals the existence of at least four other substantial conditions precedent to rendering enforceable a right to partial release. The language of the deed of trust in no way suggests to this Court that the satisfaction of any single condition should confer on Norton 72 substantially more dignified legal rights than the satisfaction of any other. Paragraph 9.1 provides for an enforceable right to a partial release only if (1) no default has occurred when (2) Norton 72 has requested and paid for the release of individual portions of the land, with the further explicit requirements that all partial releases be consistent with a plan for development that is (3) orderly, (4) approved in writing by the RTC, and (5) that does not landlock any unreleased portion of the land. See supra note*. The clear language of the deed of trust establishes these provisions as conditions precedent to an enforceable right to partial release. We therefore specifically reject appellant's invitation to differentiate between the payment condition and the other conditions by characterizing payment as a condition precedent to the creation of the right and the others as mere ministerial acts necessary for the enjoyment of the right.
 
 
 8
 It was the group of conditions relating to the plan for development that most concerned the district court. The district court ultimately found as a matter of fact that the plan of development had not been approved by the RTC in a signed writing, and was not orderly. We note that there is no assignment of error as to the district court's finding that no plan for development had been approved in writing by the RTC. This finding alone is sufficient to support a judgment in favor of the RTC on the ground that Norton 72 failed to secure the performance of a substantial condition precedent to the creation of an enforceable right to a release of a portion of the land.
 
 
 9
 Nevertheless, Norton 72 claims that the district court erred in granting the Rule 41(b) motion to dismiss upon a finding that the plan of development was not "orderly." As counsel for Norton 72 conceded in oral argument, "orderliness" is not defined in the law. We agree with the district court that the question is purely factual. As such, the district court's finding of fact is entitled to deference by this Court. See Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("[t]his is so even when the district court's findings ... are based on documentary evidence").
 
 
 10
 The district court stated not only that the plan was not orderly, but that the scheme did not amount to a "plan." The court was legitimately concerned that the definition of "orderly plan" provided in testimony by Norton 72's expert was too flexible. It was so malleable in fact, that the court stated "lot lines apparently mean nothing." App. at 130. We are not surprised that this led the court also to conclude that the word "plan" was not descriptive of the proposal by Norton 72.
 
 
 11
 The district court also found that the Norton 72"plan" was not orderly under even Norton 72's definition of "orderly plan." Again, according to Norton 72's expert, an orderly plan was one that would allow part of the land to be sold at any time without detriment to the remaining land. However, the court found that the plan was too flexible to ensure that the remaining land would not suffer detriment when some other portion of the land was released. See id.
 
 
 12
 The district court finally concluded its ruling by finding that the parcels proposed for release cut across lot lines, zoning lines and private-access portions of the plat. As such, the court found that the partial releases were not consistent with the plan even if the purported plan was both orderly and a "plan."
 
 
 13
 We do not find clear error with any of these findings. We therefore affirm the district court and hold that an enforceable right to a partial release never came into being because Norton 72 failed to satisfy substantial conditions precedent to its creation.
 
 AFFIRMED
 
 
 *
 The conditions to be met under paragraph 9.1 before Norton 72 would be entitled to a partial release of land are as follows:
 Provided no Event of Default which remains uncured has occurred with respect to the Note or any of the Security Documents, and provided no event has occurred which, with notice or the passage of time or both, would constitute an Event of Default with respect to the Note or any of the Security Documents, the Beneficiary, at the request and expense of the Grantor, will promptly authorize and direct the Trustee to release from the lien, legal effect and operation of this Deed of Trust and the other Security Documents, and to reconvey to the Grantor, individual portions of the Land upon payment to or for the account of the Beneficiary by or for the account of the Grantor for each portion of the Land sought to be released of an amount calculated as follows:....
 ....
 All partial releases shall be consistent with an orderly plan for the development of the Land by the Grantor which shall be approved in writing by the Beneficiary and no partial release shall "landlock" any unreleased portion of the Land or leave any unreleased portion of the Land without lawful and reasonable vehicular and pedestrian ingress and egress to and from a public street or roadway.