Present: All the Justices

ROBERT E. TURNER, III

v. Record No. 031950      OPINION BY JUSTICE DONALD W. LEMONS
                              June 10, 2004

MICHAEL A. CAPLAN, ET AL.

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

In this appeal, we consider the proper construction of certain restrictive covenants and exceptions thereto. Also, we consider whether the pasturing of a horse on certain lots within the subdivision in question constitutes a nuisance.

I. Facts and Proceedings

In 1975, Robert E. Turner, III ("Turner") acquired a 101.4 acre tract of land in Pittsylvania County, Virginia, and thereafter established a subdivision known as Windermere. This dispute concerns the use of Lots 4B, 5, 6, and 7 in Section D of the subdivision which will be referred to herein as the "pasture."

In 1979, Turner recorded a declaration of protective covenants, restrictions, and conditions (the "Agreement") of which relevant portions provide:

> 1. All of the lots above described shall be used exclusively for residential purposes.
>
>     . . . .
>
> 3. Only one single family dwelling may be erected on any lot, but in addition thereto, there may be erected a car garage

1

and other structures incidental to the use of such property for residential purposes.

. . . .

5.  No nuisance shall be maintained or permitted on any of said lots.

6.  There shall be no raising or harboring of pigs, goats, sheep, cows, or any other livestock or poultry on said lots, with the exception of a usual domestic pet.  This restriction shall not be applicable to Lots Nos. 1-7, inclusive, Section D.

Covenant 10 further specifies that should a court invalidate any one of the Agreement's covenants, all others remain in full force and effect.

Turner sold most of Windermere's lots; however, he retained ownership of the pasture.  Michael and Carol Caplan ("the Caplans") and Grady and Martha Carrigan ("the Carrigans") reside on lots adjoining the pasture.

At some time in the early 1980's, Turner kept a horse on the pasture for approximately six months.  Again, in the late 1990's a horse was periodically kept on the pasture.  Finally, since 2002 a horse has been kept periodically on the pasture depending upon the time of year and the weather.

In 2002, the Caplans filed a bill of complaint for injunctive relief with the Circuit Court of Pittsylvania County asking the court to permanently enjoin Turner from placing a horse on the pasture.  Thereafter, the trial court granted the Carrigans' motion to intervene in the lawsuit.

2

The trial court held that the maintenance of a horse on the pasture violated the Agreement because it was inconsistent with the intent to create a residential subdivision and because the trial court held that keeping a horse at that location constituted a nuisance. The trial court entered a permanent injunction forbidding Turner from keeping a horse on the pasture. Turner appeals the adverse judgment of the trial court and alleges that the trial court erred in its judgment that maintaining a horse on the pasture was inconsistent with the intent of the Agreement, that the specific exception from the ban upon livestock for the pasture was unreasonable, and that keeping a horse on the pasture was a nuisance.

## II. Standard of Review

The trial court's order presents findings of fact and law. We will not disturb its factual findings unless they are plainly wrong. The trial court's interpretation of the restrictive covenants is, however, a question of law, and we review those conclusions de novo. See Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

## III. Analysis

The trial court found that Turner intended to create an exclusively residential neighborhood when he formed the Windermere subdivision. The trial court further concluded

3

that placing livestock on any of Windermere's lots is inconsistent with this intent.

Covenant 1 of the Agreement is clear and unambiguous in restricting Windermere's lots exclusively for residential purposes;[*] however, Covenant 1 is subject to an equally clear and unambiguous exception in Covenant 6. Covenant 1 states that all of the lots "shall be used exclusively for residential purposes." Covenant 6 prohibits raising or harboring of livestock or poultry on the lots but further states that, "[t]his Restriction shall not be applicable to Lots Nos. 1 - 7, inclusive, Section D," which includes the pasture. We must construe the Agreement as a whole and, if possible, interpret its provisions consistently with one another. First American Title Ins. Co. v. Seaboard Sav. & Loan Ass'n, 227 Va. 379, 386, 315 S.E.2d 842, 846 (1984); Tate v. Tate, 75 Va. 522, 527 (1881). In First American Title, we said:

> it is the duty of the court to construe the [Agreement] as a whole, and *in the performance of this duty it will not treat as meaningless any word thereof, if any meaning, reasonably consistent with other parts of the [Agreement], can be given.*

Id. at 386, 315 S.E.2d at 846 (quoting Pilot Life Ins. Co. v. Crosswhite, 206 Va. 558, 561, 145 S.E.2d 143, 146 (1965)).

Adhering to this principle, we hold that Covenant 1's residential purpose, when read in context with Covenant 6, does not exclude raising or harboring livestock or poultry. Such activity is prohibited under Covenant 6 for all lots except Lots 1 through 7 of Section D, which includes the lots comprising the pasture. Turner's reservation of this right is clearly expressed.

Further, Turner states that the trial court erred in holding that exempting the pasture from the covenant forbidding raising or harboring livestock or poultry is unreasonable. While we are aware of case law holding that use of property may not be unreasonably restricted, see Hercules Powder Co. v. Continental Can Co., 196 Va. 935, 939, 86 S.E.2d 128, 131 (1955), counsel and the trial court cite no cases applying the concept of "unreasonability" to the exemptions specifically allowing the use of restricted land for particular purposes.

In holding the exemption unreasonable, the trial court apparently relied on the fact that Turner, as the original grantor/owner, is the only Windermere landowner exempted from Covenant 6's restriction. This assumption is incorrect because the exception to restrictions in Covenant 6 applies to

---

[*] Covenant 3 further suggests residential purposes by restricting construction to "one single family dwelling . . . and other structures incidental to residential purposes."

Lots 1 through 7 of Section D.  The Carrigans, who are appellees herein, own Lots 1 and 2B.

Additionally, the property owners knew at the time they purchased the lots, and assented to Windermere's covenants, that Lots 1 through 7 had been exempted from the livestock restriction.  Presumably, they considered the restriction and its exemptions reasonable or they would not have purchased their lots.  On this record, we hold that the trial court plainly erred in concluding that the exemption here was void for unreasonableness.

Finally, Turner asserts that the trial court erred in holding that "to allow the placement of livestock on lots in the subdivision would also create a nuisance in violation of Restriction No. 5."  Of course, the law of nuisance exists independently of restrictive covenants.  The fact that a prohibition upon maintaining a nuisance is found in a covenant adds nothing to analysis of whether the facts presented constitute a nuisance.

The case of Bragg v. Ives, 149 Va. 482, 140 S.E. 656 (1927), involved the proposed intrusion of a funeral home into a residential neighborhood.  In the course of determining whether the trial court erred by dismissing the bill for injunctive relief upon demurrer, we considered what is necessary to sustain a cause of action for nuisance. Quoting

6

decisions from other jurisdictions and secondary authorities

with approval, we stated:

> "In all such cases the question is whether
> the nuisance complained of will or does produce
> such a condition of things as, in the judgment of
> reasonable [persons], is naturally productive of
> actual physical discomfort to persons of ordinary
> sensibilities and of ordinary tastes and habits,
> and as, in view of the circumstances of the case,
> is [un]reasonable and in derogation of the rights
> of the complainant."

> . . . .

> "The decisions establish that the term nuisance, in
> legal parlance, extends to everything that endangers life
> or health, gives offense to the senses, violates the laws
> of decency, or obstructs the reasonable and comfortable
> use of property."

Id. at 496-497, 140 S.E. at 660 (citations omitted).  See also

Martin v. Moore, 263 Va. 640, 648, 561 S.E.2d 672, 677 (2002);

Bowers v. Westvaco Corp., 244 Va. 139, 147, 419 S.E.2d 661,

667 (1992).

Although the trial court does not expressly use the term

"nuisance per se," the language of its order embraces the

concept.  As we have previously noted, "while there is some

confusion in the books as to the meaning of the term nuisance

per se, the tendency of modern times is to restrict its use to

such things as are nuisances at all times and under all

circumstances."  Price v. Travis, 149 Va. 536, 547, 140 S.E.

644, 647 (1927).

7

The trial court's order is too broad and improperly expresses its judgment in terms that can only be interpreted as a holding of nuisance per se. First, the order refers to "livestock" when the pasturing of a horse is the issue. Second, the order refers to "lots in the subdivision" when the only lots in question constitute the "pasture." Finally, the trial court erred in its entry of a judgment that effectively holds that the mere "placement" of livestock, including a horse, on the lots at issue constitutes a nuisance at all times and under all circumstances.

## IV. Conclusion

We hold that the trial court erred in its interpretation of the legal effect of the covenants in the agreement. Further, we hold that the trial court erred in its entry of a judgment that is too broad in its application and, in effect, holds that the mere placement of a horse on the pasture constitutes a nuisance per se. We will reverse the judgment of the trial court and enter final judgment for Turner.

Reversed and final judgment.

8